**In re Estate of Josephine BLAKE;**

**Oliver Blake, Jr., Appellant.**

**No. 01–PR–935.**

District of Columbia Court of Appeals.

Argued Feb. 6, 2003.
Decided Sept. 2, 2004.

Johnny M. Howard, Washington, for appellant.

Deborah K. Hines, Washington, for appellee Estate.

Before RUIZ and GLICKMAN, Associate Judges, and FERREN, Senior Judge.

GLICKMAN, Associate J.

In the course of proceedings to probate the 1995 Last Will and Testament of Josephine Blake, a District of Columbia domiciliary who died on June 2, 2000, the decedent's brother, appellant Oliver Blake, Jr., asserted that he was entitled to the ownership of certain financial assets to which the Estate also laid claim. Among these disputed assets were three Maryland bank accounts—a savings account, a checking account, and a certificate of deposit account—that were jointly titled in the decedent's and appellant's names with rights of survivorship expressly set forth in the account agreements. After an evidentiary hearing, the trial court determined that these accounts were assets of the decedent's estate and therefore subject to the terms of her will. In reaching that conclusion, the court ruled that the issue before it was governed by the law of the decedent's domicile, i.e., the District of Columbia, rather than the law of the jurisdiction, Maryland, in which the accounts were opened. The court further ruled that the decedent had not made an *inter vivos* gift of the accounts to appellant but instead had added appellant's name to her accounts merely for convenience.

In this court, appellant challenges each of those rulings. Appellant contends that because the accounts were opened in Maryland, and the bank agreements state that they are subject to Maryland law, the law of Maryland takes precedence over that of the District of Columbia and entitles him to retain the accounts by virtue of the fact that he was the surviving joint account-holder. Appellant further contends that even if District of Columbia law controls, he owns the bank accounts because the decedent made an *inter vivos* gift of them to him when she added his name to the accounts in 1994 or 1995.

We reject appellant's specific legal contentions. The trial court's decision on the choice of law issue is in accordance with binding precedent, and its factual finding

that the decedent did not make an *inter vivos* gift of her bank accounts to appellant is supported by the evidence and certainly not clearly erroneous. However, we cannot simply affirm the judgment on appeal. The parties and the trial court were not apprised of an important statutory alteration of the common law in this jurisdiction that took effect on April 27, 2001, three days before the court rendered its decision. The District of Columbia Uniform Nonprobate Transfers on Death Act of 1999 provides that transfers of funds pursuant to right of survivorship provisions in joint bank accounts are nontestamentary and not subject to estate administration. This change in the law is intended to effectuate the passage of funds in a joint account to the remaining account holders upon one joint owner's death outside of probate even though no *inter vivos* gift was made. As a result of this change, appellant's claim of ownership based on the provisions of the account agreements may be meritorious even though appellant failed to cite the right statutory authority in support of it. Since the parties in this case did not address the impact of the Act in the trial court, we are constrained to remand for consideration of whether there is any reason why it should not be applied.

*Choice of Law*

In the trial court, appellant grounded his claim on the Multiple Party Accounts Statute enacted in Maryland in 1992 and codified in the Annotated Code of Maryland in § 1–204 of the Financial Institutions Article and § 1–401 of the Estates and Trusts Article. That legislation changed Maryland common law governing the disposition of multiple-party bank accounts upon the death of one of the parties by "releas[ing]

courts from the gift and trust tests for determining where funds should go." *Hartlove v. Maryland Sch. for the Blind,* 111 Md.App. 310, 681 A.2d 584, 600 n. 16 (1996), *vacated and remanded for reconsideration on other grounds,* 344 Md. 720, 690 A.2d 526 (1997) (internal quotation marks and citation omitted). In lieu of such tests, the law of Maryland now allows nontestamentary transfers on death to surviving account holders in accordance with the express terms of the account agreements or as the default rule when the agreements are silent on the issue. *See* MD. CODE ANN., FIN. INST. § 1–204(a), (d) (2003).

■ Appellant argues that if the Maryland Multiple Party Accounts Statute conflicts with the law of the District of Columbia, choice of law principles require us to determine his rights in accordance with the Maryland law. Since the more recent legislation in the District of Columbia is designed to accomplish the same thing as the Maryland legislation did, there appears not to be a genuine conflict at the present time between the relevant laws of the two jurisdictions. We need not explore that question further, though, because either way, precedent requires us to decide this case in accordance with District of Columbia law. We resolved the choice of law issue that appellant raises here in a recent case involving a decedent who had opened joint accounts in Virginia, which has a statute that is similar to the Multiple Party Accounts Statute in Maryland. *See In re Estate of Delaney,* 819 A.2d 968, 989–90 (D.C.2003). Finding "a clear conflict" between the Virginia law and the common law of the District of Columbia,[1] we held that in a District of Columbia probate proceeding, "the District's interests are sub-

---

1. In *Delaney* we did not consider whether the subsequently enacted District of Columbia Uniform Nonprobate Transfers on Death Act applied to the 1999 judgment at issue in the

case. *See id.,* 819 A.2d at 990 n. 15. We compared the Virginia statute, which "starts with a presumption [in favor] of ... joint tenancy with survivorship (for cash in bank

stantially stronger, and its law governs." [2] *Id.* We therefore affirmed the trial court's decision to apply the law of the District of Columbia to determine whether the Virginia joint accounts were part of the estate in the probate proceeding before it.

If a choice has to be made in the present case between applying the law of the District of Columbia and that of Maryland, *Delaney* is controlling. We follow its holding and apply District of Columbia law to determine the ownership of the Maryland joint bank accounts at issue here.

### Ownership of the Accounts Under District of Columbia Law

▮ The inclusion of a right of survivorship in an agreement for a joint bank account or similar instrument ordinarily does not meet testamentary requirements. Hence at common law such a provision was not enforceable in probate upon the death of one of the parties to the account. Funds contributed to the account by the decedent were treated as assets of the decedent's estate unless the survivor-claimant established ownership of the funds by virtue of a valid *inter vivos* gift.

These principles found expression in the District of Columbia in the longstanding common law rule that when a party opens a joint account for herself and a second party without consideration, the account is presumed opened for the convenience of the first party, even where the account is specified to be a joint account with right of survivorship. The burden of proof to overcome that presumption was on the party claiming a gift, and when that claim was first asserted after the alleged donor had died, it had to be proved by clear and convincing evidence. *See Delaney*, 819 A.2d at 990; *Davis v. Altmann*, 492 A.2d 884, 885 (D.C.1985).

In 2001, however, as part of the Omnibus Trusts and Estates Amendment Act of 2000, D.C. Law 13–292, the District of Columbia enacted a version of the Uniform Nonprobate Transfers on Death Act.[3] *See* D.C.Code §§ 19–601.01 *et seq.* (Supp.2004). Subchapter I of the Act provides that arrangements in bank account agreements and various other financial instruments for the nonprobate transfer of assets upon death are now "nontestamentary." D.C.Code § 19–601.01(a).[4] The ef-

---

accounts)," *id.* at 989, to the common law of the District of Columbia, which presumes to the contrary "where the individual who opened the account provided all the funds therein deposited . . . ." *Id.* at 988.

2. The rule in the District of Columbia, we explained, is animated by "a strong interest in preventing fraud and injustice . . . . [and] in the orderly completion of probate for the estate of a decedent who is a domiciliary of the District." *Id.* at 989 (internal quotation marks and citation omitted). In contrast, we stated, "Virginia's interest is less pronounced since the expectation interests of the parties and the convenience of estate administration cannot readily be characterized as being of the 'highest magnitude.'" *Id.*

3. This Act, which was approved by the National Conference of Commissioners on Uniform State Laws in 1989, has been adopted in whole or part throughout the United States.

*See* UNIF. NONPROBATE TRANSFERS ON DEATH ACT, 8B U.L.A. 45 (2001).

4. Subsection (a) of D.C.Code § 19–601.01 reads as follows:

(a) A provision for a nonprobate transfer on death in an insurance policy, contract of employment, bond, mortgage, promissory note, certificated or uncertificated security, account agreement, custodial agreement, deposit agreement, compensation plan, pension plan, individual retirement plan, employee benefit plan, trust, conveyance, deed of gift, marital property agreement, or other written instrument of a similar nature is nontestamentary. This section includes a written provision that:

(1) Money or other benefits due to, controlled by, or owned by a decedent before death must be paid after the decedent's death to a person whom the decedent designates, either in the instrument or in

fect of this change is that for such transfer arrangements to be enforceable, "the instrument does not have to be executed in compliance with the formalities for wills; nor does the instrument have to be probated, nor does the personal representative have any power or duty with respect to the assets."[5]

Subchapter II of the Act, D.C.Code §§ 19–602.01–602.27, comprehensively addresses the issues raised under the new regime by financial institution accounts, including checking accounts, savings accounts, and certificates of deposit, in which more than one party has an interest—so-called "multiple-party accounts."[6] Among other things, Subchapter II identifies different types of multiple-party accounts, recognizes the various purposes for which they might be held,[7] and "clarifies the rights and relationships among joint account holders, including survivorship rights." *Dennis v. Edwards,* 831 A.2d 1006, 1012 (D.C.2003).

The provisions of Subchapter II govern "account[s] established before, on, or after the effective date of this chapter...." D.C.Code § 19–602.03(b).[8] By its express

---

a separate writing, including a will, executed either before or at the same time as the instrument, or later;

(2) Money due or to become due under the instrument ceases to be payable in the event of death of the promisee or the promisor before payment or demand; or

(3) Any property controlled by or owned by the decedent before death which is the subject of the instrument passes to a person the decedent designates, either in the instrument or in a separate writing, including a will, executed either before or at the same time as the instrument, or later.

**5.** COUNCIL OF THE DISTRICT OF COLUMBIA, COMM. ON THE JUDICIARY, REPORT ON BILL 13–298, THE "OMNIBUS TRUSTS AND ESTATES AMENDMENT ACT OF 2000," at 41 (2000) [hereinafter, "JUDICIARY COMMITTEE REPORT"]. In thus facilitating the avoidance of probate, the drafters proceeded on the premise that sound policy reasons did not exist "for continuing to treat these varied arrangements as testamentary":

The drafters said that the benign experience with such familiar will substitutes as the revocable inter vivos trust, the multiple-party bank account, and United States government bonds payable on death to named beneficiaries all demonstrated that the evils envisioned if the statute of wills were not rigidly enforced simply do not materialize.... [B]ecause these provisions often are part of a business transaction and are evidenced by a writing, the danger of fraud is largely eliminated.

*Id.* at 40.

**6.** For purposes of Subchapter II, an "account" is defined to mean "a contract of deposit between a depositor and a financial institution, and includes a checking account, savings account, certificate of deposit, and share account." D.C.Code § 19–602.01(1). A "multiple-party account" is "an account payable on request to one or more of 2 or more parties, whether or not a right of survivorship is mentioned." *Id.,* § 19–602.01(5).

**7.** Subchapter II is intended to accommodate the reality that "a depositor may add another person to an account for various reasons":

The depositor may intend to reflect lifetime ownership of the account by more than one person, or to pass sums on deposit at death to another person, or simply to enable account transactions by a third person as a convenience without creating any ownership or survivorship rights in the third person. The traditional "joint account" does not adequately allow the depositor to distinguish among the different functions of the multiple-person account, and the depositor's use of a joint account for one purpose may yield unwanted consequences for other purposes.

JUDICIARY COMMITTEE REPORT, at 41–42.

**8.** In its entirety, D.C.Code § 19–602.03(b) provides as follows:

An account established before, on, or after the effective date of this chapter [April 27, 2001], whether in the form prescribed in section 19–602.04 or in any other form, is either a single-party account or a multiple-party account, with or without right of sur-

terms, therefore, Subchapter II governs our treatment of the joint bank accounts before us in the instant appeal even though those accounts were established before the Nonprobate Transfers on Death Act took effect. Because the Council prescribed specifically that Subchapter II applies to pre-existing accounts, we do not follow in this case "the traditional presumption against applying statutes affecting substantive rights, liabilities, or duties to conduct arising before their enactment." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 278, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). Instead we follow the principle that " 'statutes going into effect during the pendency of a case are presumed to be applied in that case unless there is a clear [legislative] intent to the contrary or the application of the law would result in manifest injustice to one party.' " *Smith v. United States*, 847 A.2d 1159, 1161 (D.C. 2004) (quoting 2 SUTHERLAND STATUTORY CONSTRUCTION § 41:2, at 379–80 (6th ed.2001)). As an appellate court we adhere to this principle even when the change in the law took effect after the decision on appeal was rendered (which it did not in the present case). *See Speyer v. Barry*, 588 A.2d 1147, 1154 (D.C.1991).

The Nonprobate Transfers on Death Act does not effect a material change in the law with respect to whether the decedent made an *inter vivos* gift to appellant in this case. The rule embraced by Subchapter II is that "[d]uring the lifetime of all parties, an account belongs to the parties in proportion to the net contribution of each to the sums on deposit, unless there is clear and convincing evidence of a differ-

ent intent." D.C.Code § 19–602.11(b). Thus, as the legislative history explains, "[o]ne party owns all if that party is the sole contributor to the account":

> Evidence of intention by a party to make a gift to another party might change the result, but no intention to make a present gift is imputed from opening an account in two names or from making an additional deposit to an account.

JUDICIARY COMMITTEE REPORT, at 42.

Under both the common law and the Nonprobate Transfers on Death Act, therefore, appellant had the burden of proving with clear and convincing evidence his claim that the decedent made him an *inter vivos* gift when she added his name to her Maryland bank accounts. We have no difficulty affirming the trial court's determination that appellant did not meet this burden. *See* D.C.Code § 17–305(a) (2001). The evidence was undisputed that the accounts were funded and used solely by the decedent during her lifetime. The decedent was the only person who deposited money into the accounts and the only person who wrote checks on the checking account or made withdrawals from the other accounts. The decedent maintained the checks and received all the bank statements. She also paid all the taxes on the interest earned in the accounts. Appellant was not a party to the accounts originally; the decedent added his name in 1994 or 1995 as a substitute for her deceased sister. Appellant was the third sibling to be thus designated. While the decedent was

---

vivorship, and with or without a POD [Pay on Death] designation or an agency designation, within the meaning of this subchapter, and is governed by this subchapter. The referenced section 19–602.04 provides short forms for single-party and multiple-party accounts which, if utilized, will establish the type of account provided and protect a

financial institution that acts in reliance on the form. An account that is not in substantially the form provided in § 19–602.04, whether because it was established before the effective date of the Act or for other reasons, "is governed by the provisions of this subchapter applicable to the type of account that most nearly conforms to the depositor's in-

still alive, appellant never spent or took possession of the funds in any of the accounts and never treated them as his own. He did not even know how much money was in the accounts. When appellant was asked on the witness stand if he "consider[ed] these accounts to be Josephine Blake's accounts," he answered "Yes. All of them."

The determination that there was no *inter vivos* gift is not the end of our inquiry. Reversing the common law presumption, the Nonprobate Transfers on Death Act provides that "[r]ights at death ... are governed by the principle that a depositor intends account balances to pass at death to the account survivors" unless the account contract provides otherwise. JUDICIARY COMMITTEE REPORT, at 42.[9] Each of the accounts before us here was designated specifically as a joint account with a right of survivorship. The implication of that designation is that "on death of a party sums on deposit in [the] multiple-party account belong to the surviving party or parties." D.C.Code § 19–602.12(a). Subchapter II specifies that this right of survivorship "may not be altered by will." *Id.*, § 19–602.13(b). "A transfer resulting from the application of section 19–602.12 is effective by reason of the terms of the account involved and this subchapter and is not testamentary or subject to estate administration." *Id.*, § 19–602.14.

On their face these statutory provisions appear to validate appellant's claim to

ownership of the Maryland joint bank accounts. We do not reverse the trial court's judgment, however. Neither the parties nor the trial court considered the provisions of the Nonprobate Transfers on Death Act, and we appreciate that neither the decedent nor, perhaps, appellant himself, may have intended that a nonprobate transfer of the accounts to appellant would take place upon the decedent's demise. We therefore remand the case for further proceedings to afford the parties a fair opportunity to address the question of the Act's effect. We express no opinion on whether grounds exist to avoid the operation of the Act.

*So ordered.*[10]

---

tent." D.C.Code § 19–602.04(b); *see* JUDICIARY COMMITTEE REPORT, at 44.

9. Subchapter II "establishes a preference for survivorship between the parties whether or not specified in the account contract. But if the account contract expressly negates survivorship rights or if the account is designated as a tenancy in common, the surviving parties to the account do not take by right of survivorship." *Id.* See D.C.Code § 19–602.12(a), (c).

10. Appellant also asks us to overturn the trial court's order conditioning its grant of his request to continue the hearing on his payment of $136.50 in additional attorney's fees that the Estate was obliged to incur on account of the delay. Appellant does not persuade us that the trial court abused its discretion in imposing the sanction, and we decline to disturb it. *See Hardi v. Mezzanotte,* 818 A.2d 974, 986 (D.C.2003); *Esteves v. Esteves,* 680 A.2d 398, 405 (D.C.1996).