**In re ESTATE OF Naomi Virginia BATES.**

**Marsha Karim, Appellant,**

v.

**Denise Gurley, Personal Representative, Appellee.**

**Nos. 06–PR–46, 06–PR–589.**

District of Columbia Court of Appeals.

Argued Sept. 19, 2007.

Decided May 22, 2008.

---

Charles J. Janus, Temple Hills, MD, for appellant.

W. Alton Lewis for appellee.

Before RUIZ, BLACKBURNE–RIGSBY, and THOMPSON, Associate Judges.

BLACKBURNE–RIGSBY, Associate Judge:

In the course of proceedings to probate the estate of Naomi Virginia Bates, Denise Gurley, who is one of her three daughters, was appointed personal representative. On appeal, one of Ms. Bates's other daughters, appellant Marsha Karim, challenges the trial court's denial of her request to remove Ms. Gurley as personal representative. Additionally, she challenges the trial court's denial of her request to enjoin Ms. Gurley from proceeding with the sale of one of the estate's pieces of real property.

Appellant Marsha Karim alleges that her sister, Ms. Gurley, violated her statutory duties as personal representative with regard to the following four disputed components of the estate: (1) the bank accounts; (2) a safety deposit box and its contents; (3) real property located at 4805 Lee Street, N.E., Washington, D.C. 20019 ("Lee Street property"); and (4) the 2004 tax return. There are five grounds or infractions that mandate removal of a personal representative under D.C.Code § 20–526(b) (2001).[1] In her appeal, Ms. Karim focuses on three of these grounds: § 20–526(b)(1) misrepresentation of material facts in the proceedings leading up to appointment, § 20–526(b)(3) inability to discharge the duties effectively, and § 20–

---

1. The five grounds for which removal is mandatory under D.C.Code § 20–526(b) are: "(1) misrepresent[ing] of material facts in the proceedings leading to the appointment; (2) wilfully disregard[ing] an order of the Court; (3) [inability], for any reason, to discharge the duties and powers [of a personal representative] effectively; (4) mismanage[ment of] property; or (5) [failure], without reasonable excuse, to perform any material duty of such office." § 20–526(b)(1)–(5).

526(b)(4) mismanagement of property. Ms. Karim also appeals the trial court's denial of her petition to stay the sale of the estate's real property located at 731 Adrian Street, S.E., Washington, D.C. 20017 ("Adrian Street property"). We agree with the trial court that Ms. Karim failed to establish an adequate legal basis under the statute for removing her sister as the personal representative. We also discern no abuse of discretion in the trial court's denial of Ms. Karim's petition to stay the sale of the Adrian Street property. Accordingly, we affirm.

## I. Factual and Procedural Background

On June 30, 2005, Naomi Virginia Bates died intestate and left, as her sole heirs and next-of-kin, her three daughters, Ms. Renee Tilghman, Ms. Marsha Karim (the appellant), and Ms. Denise Gurley (the appellee and personal representative of the estate).

Ms. Karim sought appointment as the personal representative of her mother's estate by attempting to file a Petition to Probate the Estate of Naomi Virginia Bates ("estate") on August 11, 2005. However, she was unable to secure a bond for the estate until August 16, 2005. Ms. Karim estimated that the value of the estate was $127,362.00, which included: (1) the Adrian Street property valued at $80,000.00; (2) her mother's part interest in the Lee Street property valued at $2,000.00; (3) an IRA account at SunTrust Bank valued at $18,362.00; (4) a checking account at SunTrust Bank valued at $11,000.00; (5) a savings account that was not valued held at an unidentified bank; (6) a checking account at Industrial Bank valued at $16,000.00; (7) a safety deposit box with unknown contents at SunTrust Bank; and (8) approximately four acres of real property in Virginia[2] ("Virginia property") that was not valued. Ms. Tilghman signed a consent waiver to Ms. Karim's petition.

Nearly simultaneously, unbeknownst to Ms. Karim and without knowledge of Ms. Karim's petition, Ms. Gurley had filed her Petition to Probate the Estate on August 17, 2005. She was able to secure a bond for the estate and her petition included an $81,000.00 bond. Ms. Gurley was appointed personal representative on August 22, 2005. When Ms. Karim attempted to file her Petition to Probate the Estate on August 23, 2005, her petition was denied because Ms. Gurley had already been appointed as the estate's personal representative in an unsupervised estate administration. Ms. Gurley did not list any bank accounts, the contents of the safe deposit box, the interest in the Lee Street property, or the Virginia property in her initial petition to probate, and only listed the Adrian Street property valued at $114,320.00.[3]

2. In Ms. Karim's petition for probate, she included her mother Ms. Bates's interest by deed of partition in "3.7181 acres in Southerland [sic], Virginia, Dinwiddie County." In her later testimony related to her petition to remove Ms. Gurley as personal representative, Ms. Karim explained that Ms. Gurley had failed to include in the petition for probate, their mother's interest in "property in Petersburg, Virginia." At oral argument, counsel for Ms. Karim referred to "one parcel of real property in Virginia." Taking these references in context and in light of the geography of that area of Virginia, we understand Ms. Karim to be referring to the same piece of real property in Sutherland, Virginia, which is located in Dinwiddie County, which neighbors and is occasionally considered an outlying area of the Petersburg, Virginia area due to its geographical proximity of under fifteen miles.

3. The statute does not specify whether Ms. Gurley was required to list real property located outside the District of Columbia in her petition for probate, inventory, and initial ac-

Ms. Gurley filed an estate Inventory on September 8, 2005. The Inventory listed the total appraised value of the decedent's property as $152,411.70, which included the Adrian Street property valued at $114,320.00 and the $38,091.70 in the Sun-Trust checking account which was comprised of the value of the closed Industrial Bank account, two closed SunTrust accounts and a closed SunTrust CD account. The safe deposit box and the real property located on Lee Street and in Virginia[4] were not included in the inventory.

After receiving the inventory, Ms. Karim on October 7, 2005, filed a petition to remove Ms. Gurley as the estate's personal representative and to substitute herself. In her response to Ms. Karim's petition for removal, Ms. Gurley disputed Ms. Karim's three alleged grounds for removal. First, Ms. Gurley argued that she had not violated § 20–526(b)(1) by misrepresenting material facts prior to her appointment because she was not required to include the Lee Street property or the joint bank accounts in her initial probate petition. Second, Ms. Gurley argued that she had not violated § 20–526(b)(4) by mismanaging property or by failing to amend the 2004 tax return because Ms. Karim possessed the relevant documents necessary to amend the 2004 tax return and refused to

give them to Ms. Gurley. Finally, Ms. Gurley argued that she had not violated § 20–526(b)(3) because her inability to appraise the Adrian Street property and the personal property located therein on October 4, 2005, was due to Ms. Karim's failure to allow her access to the property by changing the locks without notice. Ms. Karim also permitted two of her children to move into the house with a Pit Bull dog, and they would not permit Ms. Gurley to enter the house to inventory or appraise its contents.

The trial court held a hearing on Ms. Karim's petition to remove Ms. Gurley as personal representative, where it heard testimony from both Ms. Karim and Ms. Gurley, and received evidence from both parties. The trial judge found that "there's been no material misrepresentation with the proceeding leading up to the establishment of the estate," that the tax return was "perhaps a mistake, but wouldn't amount to mismanagement," and that there was not "anything here that would suggest to me that [Ms. Gurley] should be removed." The trial court noted that Ms. Gurley "included funds in the estate that probably don't really need to be there" and the safety deposit box "really didn't even need to be in the estate" because those accounts were joint ac-

counting (after the estate administration became a supervised one), but Superior Court forms instruct that "real property in the District of Columbia must be listed." *See* D.C.Code §§ 20–304 (petition for probate "shall contain all knowledge or information of the petitioner with respect to ... the character, location, and estimated value of the decedent's real and personal property ...."); 20–711 (inventory "shall" include real property owned by decedent at time of death); 20–713.01(a) (personal representative in an unsupervised administration is required to "prepare and deliver or mail ... an inventory of property owned by the decedent at the time of death ...."); 20–722 (initial account in supervised administration shall include "value

of any remaining assets in the possession or control of the personal representative"); *see also* Super. Ct. Probate Form 2 (petition for probate requires "[c]haracter, location and estimated value of property titled in decedent's name" for "[r]eal property located in the District of Columbia"); Super. Ct. Probate R. 409(f) (model form for inventory summary requires list of "real property in the District of Columbia" but also requires list of "all other interests"). As of the December 16, 2006, hearing before the trial court, the disposition of the Virginia property had not commenced in Virginia.

4. *See* fn.2, *supra*.

counts, and, therefore, Ms. Gurley had a survivorship right in the property.[5] Ms. Karim did not introduce any contradictory evidence that the accounts were not survivorship accounts. The trial court further noted that Ms. Karim's conduct and attitude counseled against appointing her as personal representative.[6] On December 19, 2005, the trial court denied Ms. Karim's petition to remove Ms. Gurley as the estate's personal representative and ordered that the estate would be under supervised administration.[7] Ms. Karim filed a timely Notice of Appeal on January 13, 2006.

On March 8, 2006, Ms. Gurley filed a petition to sell the decedent's Adrian Street property. In her petition, she explained that, notwithstanding the fact that the Adrian Street property was generating rental income[8], given the animosity between her and her two siblings, it would be in the best interest of the estate to sell the property and divide the proceeds rather than to own the property jointly.

Ms. Karim filed a petition requesting that the trial court stay the sale of the Adrian Street property because her appeal from the trial court's December 19, 2005, order denying her petition to remove her sister as personal representative was still pending. Ms. Karim also argued that Ms. Gurley should have first sought to sell the decedent's interest in the vacant Lee Street property instead of the income-generating Adrian Street property.

Following a hearing on April 27, 2006, the trial court denied Ms. Karim's petition to stay the sale and granted Ms. Gurley's petition to sell the Adrian Street property. Ms. Karim, through her attorney, filed a Notice of Appeal on May 25, 2006, and requested that this Court stay all orders of the Superior Court.

This Court consolidated both appeals, 06–PR–589 and 06–PR–46, on June 9,

---

5. Although the trial judge did not expressly reference the District of Columbia Uniform Nonprobate Transfers on Death Act, D.C.Code § 19–601.01 et seq. (2001), he apparently applied § 19–602.12(a). His order correctly determines that the sums on deposit in jointly held accounts and the lease on the safety deposit box account, which was also jointly held, belonged to Ms. Gurley once Ms. Bates died. The contents of the safety deposit box are discussed infra. Only in the absence of a survivorship right are the decedent's contributions to a multiple-party account transferred as part of the decedent's estate. § 19–602.12(c).

6. Specifically, the trial judge stated that he "wouldn't want [Ms. Karim] to be the personal representative because I don't believe that given—the house that she wants to buy and given that her kids are there and given the fact that she changed the locks on [the house] after the personal representative was appointed, I don't think that's inconsistent—that's consistent which [sic] would be the kind of attitude that I would want in a personal representative."

7. A supervised estate administration requires the personal representative to file with the court an initial inventory, supplemental inventories, and render an initial account of the decedent's property as well as subsequent accounts at specified times. D.C.Code §§ 20–713, 20–722–24. In an unsupervised administration, the personal representative is required to prepare and deliver an inventory to all interested persons, and to supplement that inventory if necessary. D.C.Code § 20–713.01. There are additional requirements for a supervised administration, and the level of court involvement is greater. See generally D.C.Code §§ 20–713 (obligation to report supplemental inventories, reappraisals, and certifications to the court); 20–721 (duty to render accountings); 20–722 (duty to render initial accounting); 20–723 (duty to render subsequent accountings); 20–724 (listing the multiple instances when accountings must be rendered to the court).

8. Ms. Karim's children were living in the house and paying rent at the time.

2006, and denied Ms. Karim's motion to stay all orders of the Superior Court.

As part of her duties as personal representative, on September 29, 2006, Ms. Gurley filed a statement of account ("Accounting") for the estate for the period of June 30, 2005, through September 15, 2006.[9]

## II. Analysis

### A. The Trial Court Properly Denied Ms. Karim's Petition To Remove Ms. Gurley As Personal Representative.

■ Under § 20–526(b), the trial court must remove the personal representative of an estate if it finds, after a hearing, that she has committed any one of the enumerated infractions. *See supra fn. 1.* Because the court has no discretion, but is statutorily bound to remove the personal representative if it finds that she has committed one of the enumerated infractions, we review only the determination of whether an infraction has been committed. *In re Estate of Delaney*, 819 A.2d 968, 1002 (D.C.2003). We review the trial court's conclusions of law *de novo*, and we may set aside any decisions insofar as they rest on an erroneous view of the law. *See* D.C.Code § 17–305(a) (2001); *Moshovitis v. The Bank Companies*, 694 A.2d 64, 67 (D.C.1997). We may not set aside a judgment of a trial court in a matter tried without a jury except for errors of law unless it appears that the judgment is plainly wrong or without evidence to support it. *See In re Estate of Delaney, supra*, 819 A.2d at 1002.

Ms. Karim argues that Ms. Gurley committed three infractions enumerated by D.C.Code § 20–526(b) that require her removal as personal representative: misrepresentation of material facts leading to her appointment, mismanagement of estate assets, and ineffective discharge of her personal representative duties. We address each allegation in turn.

### Misrepresentation of Material Facts

■ Ms. Karim alleges that Ms. Gurley misrepresented material facts leading to her appointment as personal representative because she knew that certain bank accounts existed but failed to list them in her petition to become the personal representative. Ms. Gurley concedes that she did not list the bank accounts separately in her initial petition for probate. However, Ms. Gurley argues that she was not required to do so because the accounts were not estate assets. We agree that Ms. Gurley did not misrepresent material facts leading up to her appointment as personal representative.

At the time of the initial probate petition, the personal representative has a statutory duty to include an estimate of the decedent's real and personal property based upon her knowledge and information at the time of filing. *See* D.C.Code § 20–304. There is no requirement that the personal representative file a verified and complete inventory of estate assets at the time of the initial probate petition. *Id.; see also* D.C.Code § 20–323. The statute provides that in an unsupervised administration, a personal representative must file a verified and complete inventory of estate

9. The total value of the estate was listed as $248,200.56. This included the higher appraised value of the Adrian Street property at $207,100.00, the $38,091.70 value of the combined bank account balances, the $378.00 combined value of a $25.00 Superior Court refund and federal tax refund of $353.00, the $30.86 value of dividend and interest income, the $2,600.00 total value of the rental income from the Adrian Street property comprising five monthly payments of $650.00 each, the $7,492.25 in expenses that arose after the death of the decedent in connection with the settlement of the estate, and $240,708.31 as assets left for future accounting.

assets within three months of her appointment. *See* D.C.Code § 20–711 (verified inventory shall be filed within three months of appointment); D.C.Code § 20–713.01 (unsupervised personal representative also required to file verified inventory within three months of appointment). As personal representative of an unsupervised estate at the time she filed the inventory on September 8, 2005, Ms. Gurley was required to prepare a verified inventory of, *inter alia*, the bank accounts and money owned by the decedent at the time of her death. Ms. Gurley satisfied this requirement. Ms. Gurley was not required to list the bank accounts that she jointly held with her mother because they were nontestamentary. *See fn. 3, supra.* As such, they would not be transferred or considered part of the estate upon the decedent's death. *See* §§ 19–601.01(a)(1) (money owned by decedent before death must be paid after the decedent's death to a person whom the decedent designates in the account or deposit agreement); 19–602.12(a) (unless a multiple-party account's terms designate that it is without right of survivorship, on death of one party, the sums on deposit in a multiple-party account belong to the surviving party); 19–602.12(c) (if multiple-party account's terms designate it is without a survivorship right, decedent's contributions are transferred as part of decedent's estate).

Ms. Gurley included in her September 8, 2005, inventory the $38,091.70 in a SunTrust checking account that was comprised of the value of the closed Industrial Bank account, the two closed SunTrust accounts and the closed SunTrust CD account. Ms. Gurley testified and introduced exhibits that on all but the Industrial Bank account, Ms. Gurley was listed either as a joint account holder or beneficiary.[10] This evidence supports the trial court's conclusion that the accounts had survivorship rights relieving Ms. Gurley of the requirement to list them in the inventory. Upon the decedent's death, with the exception of the Industrial Bank account where Ms. Bates was the sole account holder with no beneficiary listed, all the funds in the remaining bank accounts and the lease on the safety deposit box account[11] became the property of Ms. Gurley, not of the estate. Ms. Karim did not adduce any evidence that the account agreements contained any language negating Ms. Gurley's survivorship rights in the accounts. *See* §§ 19–602.12(a) (unless a multiple-party account's terms designate that it is without right of survivorship, on death of one party, the sums on deposit in a multiple-party account belong to the surviving party); 19–602.12(c) (if multiple-party account's term designate that it is without survivorship right, decedent's contributions are transferred as part of decedent's estate).[12]

10. Ms. Gurley was listed as a joint account holder with the decedent and her father, Mr. Harry M. Bates (deceased), on a SunTrust checking account and a SunTrust safety deposit box. Ms. Gurley was listed as a joint account holder with the decedent on a SunTrust money market account. The decedent held a SunTrust CD and IRA account that listed Ms. Gurley as the sole beneficiary. The decedent's Industrial Bank account was the only account where the decedent was the sole account holder with no beneficiary listed, but it was consolidated with the three other Sun-

Trust accounts and included in Ms. Gurley's September 8, 2005, inventory.

11. The contents of the safety deposit box are discussed *infra*.

12. The District of Columbia's version of the Uniform Nonprobate Transfers on Death Act, *see* D.C.Code § 19–601.01 *et seq.*, governs "account[s] established before, on, or after the effective date of this chapter," which was April 27, 2001. D.C.Code § 19–602.03(b). Although the record is unclear as to when the joint accounts in this case were established,

Because Ms. Gurley was listed as either the sole beneficiary or joint holder of the bank accounts (including the lease on the safety deposit box account), those accounts did not belong to the decedent Ms. Bates at the time of her death and were "nontestamentary" accounts that Ms. Gurley was not required to include as part of the estate's assets. *See* § 19–602.12(a). Given that those accounts were not considered part of the estate, Ms. Gurley was not required to transfer those funds to the estate's account or to list them at all on the estate's inventory or to list the lease on the safety deposit box account. The trial court correctly concluded that Ms. Gurley had "included funds that probably really don't even need to be there."

Irrespective of whether the contested items were characterized as estate assets subject to probate or Ms. Gurley's personal assets that were nontestamentary, Ms. Gurley consolidated the funds in the accounts and transferred them to the estate by the time she filed the verified inventory thereby effectuating the result that Ms. Karim seeks—to have the bank account funds included as part of the estate's assets. Ms. Gurley took these actions in a timely manner consistent with the statutory requirements. *See* D.C.Code §§ 20–523

(no requirement that personal representative file inventory of estate assets at time of initial probate petition); 20–711 (personal representative required to file verified inventory including bank accounts and money owned by decedent at time of her death). Contrary to appellant's assertions, Ms. Gurley did not make material misrepresentations about the amount of the estate's assets.

### Mismanagement of Estate Property

■ Ms. Karim alleged that Ms. Gurley mismanaged estate property by failing to properly include in the inventory or accounting to the court the two envelopes retrieved from the decedent's safe deposit box. One of the envelopes had the name of Ms. Tilghman written on the exterior. This envelope contained $1,950.00 in cash. The second envelope is still unopened and does not have any exterior markings. Ms. Gurley gave both envelopes to her attorney to hold during the pendency of this litigation. Ms. Karim also alleged that Ms. Gurley mismanaged estate property by failing to amend Ms. Bates's 2004 tax return to include receipts for medical expenses, which would have resulted in a larger deduction and, thus, a larger refund.

the plain language regarding the Act's retroactivity establishes that the Act does indeed apply to those accounts. Unlike our prior cases of *In re Estate of Walker*, 890 A.2d 216, 220 n. 5 (D.C.2006) and *In re Estate of Blake*, 856 A.2d 1151, 1156–57 (D.C.2004), there is no factual dispute here about whether the decedent intended the account assets to be survivorship assets. There is nothing in the record of this case evidencing the decedent's intention to rebut the Act's recognition of survivorship rights in a multiple-party account. Also, unlike those two prior cases, the Act had been the law of the jurisdiction for years prior to the decedent's death and the trial court's decision. *Cf. In re Estate of Walker, supra*, 890 A.2d at 219–20 (remanding where Act's effective date was two years *after* decedent's death and one year *after* appel-

lant's suit was filed, but two and a half months before the trial court's summary judgment motion, and where witness testified that three years before Act's effective date decedent did not want appellant to have "one red cent" and sought to remove him from the account); *In re Estate of Blake, supra*, 856 A.2d at 1152, 1153, 1157 (remanding when Act took effect three days before the trial court rendered its decision and where witnesses testified that decedent never intended appellant to have survivorship rights to the assets). Further, the trial court noted that the end that Ms. Karim sought to achieve—to have the accounts' assets included in the estate for distribution to all beneficiaries and not transferred solely to Ms. Gurley—was effectuated by the time of the filing of the inventory. *See* 12/19/05 Tr. 51.

Ms. Gurley contends that she was not required to list the safety deposit box account or its contents because she was listed as a joint account holder for the safety deposit box account. She contends that the contents of the safety deposit box were "nontestamentary" assets that did not need to be considered—or listed as—part of the estate. In support of her contention, Ms. Gurley testified that it was the decedent's "wish at the time way before she died or passed [that] she wanted that safety deposit box to go to [Renee Tilghman, her youngest daughter]." Ms. Gurley also testified that one of the envelopes in the safety deposit box was addressed to her younger sister, Ms. Tilghman, and contained $1,950.00 in cash, which she intended to give to Ms. Tilghman in accordance with her mother's wishes. However, Ms. Gurley did not open the second envelope, which was unmarked, even though she speculated that it also contained money for Ms. Tilghman. Furthermore, Ms. Gurley testified that she believed the contents of the safety deposit box belonged to her sister Ms. Tilghman and that after consulting her counsel about whether she should distribute the two envelopes directly to Ms. Tilghman, her counsel instructed her to hold onto the envelope until her counsel could determine whether the envelope belonged to Ms. Tilghman or to the estate.

■ The trial judge expressly credited Ms. Gurley's testimony that her counsel informed her that the safety deposit box account was a joint account, which was not required to be included in the estate, and that "technically speaking everything in the safe deposit box could be argued to be Miss Gurley's," Ms. Gurley still wanted to transfer the envelopes in the safety deposit box to Ms. Tilghman pursuant to her belief that the property belonged to her sister Ms. Tilghman. The trial judge found that Ms. Gurley acted in "good faith all along"

and that he "fully agree[d] with [Ms. Gurley's counsel] that [the safety deposit box] really didn't even need to be in the estate given that [it was] a joint safety deposit box." We defer to the trial court's credibility determinations unless they are clearly erroneous. *Stroman v. United States,* 878 A.2d 1241, 1244 (D.C.2005). The court's finding that Ms. Gurley acted in good faith is supported by record evidence in the form of Ms. Karim's acknowledgment at trial that she also believed the "property inside" the "safety deposit ... belonged to Renee [Tilghman]" and that Ms. Tilghman "was led [by Ms. Gurley] to believe that there would be money forthcoming." (12/16/05 Tr. 31).

This credibility-based determination of good faith on Ms. Gurley's part—as supported by Ms. Karim's acknowledgment that she too believed the contents of the safety deposit box to be Ms. Tilghman's—is important because, as personal representative of the estate, Ms. Gurley was a fiduciary, who was required "to settle and distribute the estate of decedent in accordance with ... the laws relating to intestacy and this title, *as expeditiously and efficiently as is prudent and consistent with the best interests of the persons interested in the estate."* See D.C.Code § 20–701 (emphasis added); *In re Estate of Green,* 912 A.2d 1198, 1209 (D.C.2006) ("personal representative must place the best interests of the heirs ahead of his own interests"); *accord* Md.Code Ann., Est. & Trusts § 7–101(a) (2008) (identical statutory language; holding personal representative to standards of a reasonably prudent person acting in good faith). As the personal representative, Ms. Gurley was empowered to employ an attorney to advise and assist her in the performance of her duty, which she did in this case. *See* D.C.Code § 20–741.

As we noted *supra*, Ms. Gurley was the joint account holder of the safety deposit box account and acted upon the advice and instructions of her counsel that she was not under a duty to include either the account or its contents in her inventory or accounting. Specifically, she was required to list "property" of the estate, which includes "personal property ... that is owned by the decedent and that does not pass at the time of the decedent's death to another person ... by operation of law." D.C.Code § 20–101(*l* ). We note at this juncture that the statute does not specify—nor does our case law address—whether safety deposit box accounts are included in its definition of multiple-party accounts which are not subject to probate transfer. *See* D.C.Code § 19–602.01(1) (" 'Account' means a contract of deposit between a depositor and a financial institution, and includes a checking account, savings account, certificate of deposit, and share account."). Even if we assume that the safety deposit box account (namely, the lease of the safety deposit box) carried a survivorship right to the lease of the safety deposit box itself, there is no indication in the statute or our limited case law of whether such a survivorship right would also apply to the *contents* of the safety deposit box. Multiple interpretations are therefore possible: (1) that the lease to the safety deposit box passed directly to Ms. Gurley upon her mother's death and that she was not required to include the account (and the contents of that safety deposit box) in her inventory or accounting because she became the owner of those contents; or (2) that title to the contents to the safety deposit box did not pass to Ms. Gurley upon her mother's death, even if title to the lease to the account did, and thus, she was required to list the contents as estate assets; or (3) neither the lease to the safety deposit box account nor the contents of the safety deposit box passed to Ms. Gurley upon the decedent's death and they were estate assets that were required to be listed on the inventory and accounting. Thus, the safety deposit box account and its contents could be deemed to fall outside the definition of estate property if they were held to pass directly to Ms. Gurley in which case they would not need to be included in the inventory or the accounting.

Having identified a distinction between the possible treatment of the lease of the safety deposit box account and its contents, we note that we need not reach this issue in the case before us. Quite simply, Ms. Karim alleges mismanagement on Ms. Gurley's part for failing to include the contents of the safety deposit box on her inventory and accounting but does not allege any prejudice to the estate or its beneficiaries resulting from her alleged mismanagement, inability to perform her duties effectively, or failure to perform material duty. As noted, the trial court expressly credited Ms. Gurley's testimony that her counsel had advised that the contents of the safety deposit box now belonged to her and found that she acted in good faith because in holding the contents of the safety deposit box for Ms. Tilghman pending the resolution of the litigation, Ms. Gurley was acting in the best interests of the estate by trying to effectuate her mother's will. Given the statutory ambiguities we have identified, we cannot say that the trial court erred in its determination that Ms. Gurley should not be removed for mismanagement. As the trial court found, the evidence supports that Ms. Gurley acted prudently and in good faith in seeking her counsel's advice on what to do about the contents of the safety deposit box, which she believed was the property of Ms. Tilghman, not the estate, and by following that advice pending final resolution by the court.

Ms. Gurley was between the proverbial rock and a hard place: if she acted in accordance with her reasonable, prudent, and good faith belief that the contents were not estate property (as supported by her counsel's interpretation of the law, her mother's expressed intent, and even Ms. Karim's acknowledgment at trial that the property in the box was Ms. Tilghman's property), she was not required to list them, but could face an allegation of mismanagement. On the other hand, if she deliberately acted in contravention of her belief (as well as that of Ms. Karim's and her counsel's advice) by including the envelopes as estate property, she would have reduced Ms. Tilghman's entitlement from the whole to a one-third share and Ms. Gurley would have garnered a one-third interest herself as an heir, which could possibly expose her to allegations of self-dealing and violation of her fiduciary duty to act in the estate's best interests. *Compare Richards v. Richards,* 27 Md.App. 1, 338 A.2d 377 (Md.1975) (mismanagement and inability to discharge duties led to removal of personal representative who deliberately defied court orders and whose late filings of estate taxes resulted in $11,000 in interest and penalty charges) *with Smith v. Waller,* 225 Md. 94, 169 A.2d 454 (1957) (fourteen-day delay in filing inventory insufficient to remove personal representative when no prejudice to estate or beneficiary resulted).

Although Ms. Gurley testified that it was the decedent's wish that "the safety deposit box go to [Renee Tilghman, her youngest sister]," it is not entirely clear how the decedent intended to distribute one of the two envelopes contained within the safety deposit box. Based upon Ms. Gurley's testimony that one of the envelopes, which contained $1,950.00 in cash, was addressed to Ms. Tilghman and that the decedent intended the safety deposit box as a whole to pass to Ms. Tilghman,

the trial court concluded that the decedent intended Ms. Gurley to ensure the transfer of the safety deposit box and its contents to Ms. Tilghman, especially considering that Ms. Karim adduced no evidence to the contrary. However, Ms. Bates's writing on the envelope did not legally require Ms. Gurley to give the cash to Ms. Tilghman, because the writing does not meet the requirements for a valid testamentary instrument. *See* D.C.Code §§ 18–102 (capacity to execute a will); 18–103 (requirements of a writing, signature, and attestations); *see also* W. Bowe & D. Parker, Page On The Law of Wills § 26.8, at 22 (rev.3d ed. 2004) ("[E]very instrument of a testamentary character whether it passes realty or personalty or both, must be submitted to probate in order to give it legal effect and to make it operative as an instrument.").

The status of the second envelope also presents a challenge. It was not clearly labeled on the outside like the first envelope, and it remained unopened as of the time of oral argument. Ms. Gurley's testimony regarding the decedent's wishes supports the conclusion that the decedent intended the safety deposit box as a whole, including the second unmarked and unopened envelope, to pass to Ms. Tilghman. Even if the second unmarked and unopened envelope contained an asset (e.g., a stock certificate) that requires another method of transfer of title, as personal representative of the estate, Ms. Gurley was empowered to "take possession of and hold assets owned by the decedent," including securities, to effectuate the decedent's intent. D.C.Code § 20–741(1), (10)-(11); *see also* D.C.Code § 20–105 (providing that "all property of the decedent ... upon the decedent's death, shall pass directly to the personal representative, who shall hold the legal title for administration and distribution to the estate"). Because

the underlying factual predicate of the contents of the second envelope has not been developed and is not in the record before this Court, the issue as presented is a hypothetical one—namely, what is in the unmarked and unopened envelope and what effect that has on its ownership. This court does not decide hypothetical or abstract questions. *Smith v. Worksman,* U.S. D.C.App., 99 A.2d 712, 713 (1953). Therefore, we decline to reach this issue at this time because we have previously held that "the suggestion that this court may wish to give the [appellant] guidance on an issue not yet presented amounts to a request that we write an advisory opinion." *District of Columbia v. Wical Ltd. P'ship,* 630 A.2d 174, 182 (D.C.1993). "Courts should not decide more than the occasion demands." *Id.*

We note that nothing in our opinion prevents Ms. Karim from petitioning the trial court to order Ms. Gurley in her capacity as personal representative to render an account of the contents of the safety deposit box determine if there are any assets that should pass to the estate or that are titled or registered to another person. *See* § 20–724(4) (a supervised personal representative "shall render accounts at such times as may be ordered by the Court."). Once the contents have been determined, Ms. Karim may discover her challenge is moot or she may petition the trial court for an appropriate remedy.

■ Ms. Karim also alleges that Ms. Gurley mismanaged estate assets because the 2004 tax return was not amended in a timely manner, thereby depriving the estate of a larger refund. We have generally found that a personal representative's extreme tardiness in filing taxes for an estate, which results in substantial federal penalties and interest levied upon the es-

tate, is a ground for removal. *See, e.g. In re Estate of Delaney,* 819 A.2d 968, 1002–03 (D.C.2003) (late filing of tax return that resulted in "substantial IRS penalties" justified removal even when personal representative had employed both legal counsel and a tax expert).

This case is easily distinguishable, however, because Ms. Gurley timely filed the estate's tax return for 2004 and did not subject the estate to *any* penalties or interest payments levied by the IRS. Furthermore, she was also not in possession or control of the relevant information needed to amend the return for a larger refund. Without the receipts from the decedent's medical care, which Ms. Karim testified that she had paid, and presumably had in her possession, Ms. Gurley could not file the amended tax return claiming the deduction for the medical expenses. Indeed, the trial court credited Ms. Gurley's testimony and explanation, and noted that the tax return may "perhaps [be] a mistake, but wouldn't amount to mismanagement." We defer to the trial court's credibility determinations unless they are clearly erroneous. *Stroman, supra,* 878 A.2d at 1244.

**Failure to Discharge Duties Effectively**

■ Third, Ms. Karim argued that Ms. Gurley has failed to discharge her duties effectively as personal representative [13] by failing to properly account for the value of the Lee Street property, and by failing to have it appraised, listed for sale, or included on any filing made to the trial court. Ms. Gurley disputes these allegations and testified that the Lee Street property was part of the estate of Sterling Myrtle, Sr., who was the decedent's father (and Ms. Gurley's grandfather). Ms. Gurley explained that she did not include it in her filings to the trial court because Mr. Myr-

13. § 20–526(b)(3).

tle's estate had not yet completed probate and, therefore, it was unclear how much of an interest Ms. Bates's estate may have been entitled to at that point and she did not believe that any future interest her mother may be entitled to was part of her mother's estate.

In the District of Columbia, legal title to real property does not pass directly to the heirs, which was the common law rule, but rather to the personal representative of the decedent's estate. § 20–105; *see Johnson v. Martin,* 567 A.2d 1299, 1304 (D.C. 1989). In this case, the title to the Lee Street property vested upon Mr. Myrtle's death in Mr. Ronald Linward Jeffries, who is the personal representative of Mr. Myrtle's estate, and did not vest immediately in his heirs, including Ms. Bates. The list of interested persons in the Lee Street property includes Mr. Myrtle's two other surviving daughters, Ms. Ruth M. Jeffries and Ms. Jean M. Wilson, in addition to his two children who died after him, Ms. Naomi M. Bates and Mr. Sterling Myrtle, Jr., who are each survived by their own children. As title to Mr. Myrtle's Lee Street property had not yet vested in Ms. Bates's estate because Mr. Myrtle's estate had not yet been distributed, Ms. Gurley simply could not, as a factual and legal matter, distribute that interest to Ms. Bates's heirs until such interest was distributed from Mr. Myrtle's estate. Even though Mr. Myrtle died intestate on February 20, 1986, Mr. Jeffries did not file his petition for probate of Mr. Myrtle's estate until June 1, 2006, and did not file an inventory of the estate until November 16, 2006. There is no evidence in the record that the estate of Mr. Myrtle is supervised. The record reflects that the consent to Mr. Jeffries's appointment and waiver was signed by the heirs or their estate representatives or children. Ms. Gurley consented to the appointment of Mr. Jeffries on behalf of Ms. Bates's estate, in her capacity as personal representative, because Ms. Bates was deceased by the time Mr. Jeffries's filed his petition to probate the estate of Mr. Myrtle. There is no evidence or testimony in the record that there has been any distribution of Mr. Myrtle's estate. Indeed, at the time of Ms. Karim's petition to remove Ms. Gurley, Mr. Jeffries was still within the statutory time frame to file the initial account of the estate regardless of whether Mr. Myrtle's estate was supervised or unsupervised. *Compare* § 20–724 (initial account must be filed within a year and a day after publication of notice of appointment in supervised administration) *with* § 20–734 (unsupervised personal representative "shall" account for receipts, disbursements, and distribution at "reasonable intervals, or on reasonable demand").

We note also that the statute does not specify whether estate property, which is defined as property "owned by the decedent", includes expectancies, such as an interest that has yet to vest as in this case, and whether such expectancies can be considered to be "owned." *See* § 20–101(*l*) (applies to "any interest [in real property] that is owned by decedent"). Even if we assume that the definition of estate property included such expectancies, at the time Ms. Gurley prepared her inventory and accounting, it was unclear what interest, if any, Ms. Bates's estate actually "owned." Does a party "own" an expectancy interest, or does a party merely hold an expectancy interest, and upon the occurrence of certain conditions precedent (i.e., title vesting in the personal representative who then pays off the estate's debts and is able then to distribute the interests to the distributees), the party then *actually owns that interest?* Even though Ms. Bates's presumptive one-fourth share in Mr. Myrtle's property would eventually pass to her estate to be

divided equally by her three children, our statute and case law do not specify whether that expectancy interest is actually "owned" by the decedent for purposes of notification of interested parties by listing in the estate's inventory before its distribution by Mr. Myrtle's personal representative. *See* D.C.Code §§ 19–306 (children share equally if no surviving spouse); 19–307 (equal shares pass to decedent's children); § 19–313 (distribution to estate if distributee dies before distribution). There is no indication in the record that Mr. Myrtle's estate was in a position to distribute the respective shares of the Lee Street property to the distributees (i.e. that there were no estate debts that would have prevented the distributees from taking their shares); what the value of those shares would be; or how the interests in the property would be distributed (whether from proceeds after a sale or our common tenancies). There is no indication in the record before us that Ms. Gurley has unreasonably delayed or failed to act appropriately with respect to the Lee Street property thus warranting her removal.

Given that neither the relevant statutory provisions nor our case law specifies whether an expectancy interest is property that is "owned" by a decedent awaiting distribution from a personal representative of another estate, and that we have imposed a burden by statute that did not exist at common-law (that title vests in the personal representative for distribution), it is difficult to fault Ms. Gurley for not including this interest which was not yet distributed or realized. It would have been difficult for her to estimate the value of the interest as it depended not only on the appraised value of the Lee Street property, but also on any debts from Mr.

Myrtle's estate, which had not completed probate yet. Acting in her role as personal representative of Ms. Bates's estate, Ms. Gurley was a fiduciary, who was bound to settle the estate in accordance with the governing laws and to act as a prudent person in the best interests of the estate. *See* D.C.Code § 20–701. We defer to the trial court's credibility determination, which is supported by record evidence, that Ms. Gurley acted in good faith and did not fail to discharge her duties effectively, especially in light of the unsettled nature of the law on this particular issue. Therefore, we do not decide more than is required, *see Wical Ltd. P'ship, supra,* 630 A.2d at 182, and affirm the trial court's denial of the petition to remove Ms. Gurley on this ground.[14]

## B. The Trial Court Properly Denied Ms. Karim's Petition To Stay The Sale Of The Adrian Street Property.

Ms. Karim appeals the trial court's denial of her petition to stay the sale of the Adrian Street property and its grant of Ms. Gurley's petition to sell the property. She alleges that good cause existed for restraining Ms. Gurley's actions as the personal representative because Ms. Gurley should have sought to sell the vacant Lee Street property, in which Ms. Bates had a partial interest, instead of the income-generating Adrian Street property. Additionally, Ms. Karim objected on the grounds that she wanted to keep the property "in the family" and that her two children had been living at the Adrian Street property following the decedent's death. Ms. Gurley contended that she sought to dispose of the Adrian Street property first

---

**14.** We note that if and when such an interest is distributed from Mr. Myrtle's estate, Ms. Gurley is directed to her duties to file a sup-

plemental accounting with the trial court. D.C.Code § 20–723 (subsequent accounts).

because she wished to forego the animosity involved in co-ownership of the property among her siblings.

The trial court's decision that good cause exists to restrain a supervised personal representative from acting is "committed to the discretion of the trial court and is reviewable by this court only for an abuse in its exercise." D.C.Code § 20–521; *see also In re Estate of Delaney,* 819 A.2d 968, 1002 (D.C.2003) (holding that trial court's discretionary power to appoint a personal representative was reviewable under abuse of discretion standard due to permissive statutory language).

■ We discern no abuse of discretion in the trial judge's conclusion that Ms. Gurley acted appropriately in her capacity as personal representative of the estate. In denying Ms. Karim's motion to stay the sale of the Adrian Street property, the trial court credited Ms. Gurley's explanation that "[i]t's not feasible not feasible [sic] in her judgment to partition the property among [the siblings] except through a sale [and t]here is no other feasible way of disposing of the estate except through sale of the property." The estate had a total value of approximately $245,000, and each of the three siblings was entitled to equal one-third shares worth approximately $81,600. Notwithstanding Ms. Karim's desire to keep the property in the family, the estate lacked sufficient cash to pay those interests unless the Adrian Street property was sold. The income the Adrian Street property · generated—$650 per month—clearly was insufficient to pay the financial interests of the three siblings in a timely manner. The trial court also credited Ms. Gurley's testimony that it would be imprudent and impractical for the three siblings to hold the Adrian Street property as tenants-in-common. Moreover, the trial court noted that the increased bond that Ms. Gurley filed, which would cover the interests of Ms. Karim and Ms. Tilghman in the property, would "satisfy any concern regarding possible defalcation or mistake by the personal representative['s] abuse of fiduciary duty."

The trial court correctly noted that all of Ms. Gurley's actions were authorized by the general statutory grant of powers to a personal representative [15] and that it was "not convinced that it would unreasonably jeopardize [the interests of the heirs who had equal shares in the property]." Moreover, the trial court noted that Ms. Gurley was under a "duty to sell the estate expeditiously and fairly" and that Ms. Gurley's petition to sell the property was "something that should be done in the ordinary course of the administration of the estate, would be done by any other personal representative, and could well be done." *See* D.C.Code 20–701(a) ("A personal representative ... is a fiduciary who ... is under a general duty to settle and distribute the estate of the decedent ... as expeditiously and efficiently as is prudent and consistent with the best interests of the persons interested in the estate."). Therefore, the trial court noted that it did not "see any interest that's contrary to that of the petitioner."

For the foregoing reasons, we affirm the trial court's orders denying Ms. Karim's petition to remove Ms. Gurley as personal representative and Ms. Karim's petition to stay the sale of the Adrian Street proper-

---

15. Under the statute, the personal representative is authorized to "dispose of property, real or personal, including land in this ... jurisdiction, for cash or on credit, at public or private sale; and manage, develop, improve,

ty.[16]

*Affirmed.*

exchange, partition, change the character of, or abandon an estate asset." § 20–741(6).

16. At oral argument on September 19, 2007, Mr. Janus, Ms. Karim's counsel, informed the court that Ms. Karim had signed a contract to purchase, at the sale price, the Adrian Street property from Ms. Gurley thereby abandoning her petition to stay the sale of the property. Counsel informed this Court through the Clerk of the Court in November, following oral argument, that the settlement did not occur. The facts recited herein explain why the issue of staying the sale of the Adrian Street property is not moot.