*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 15-PR-1069

IN RE ESTATE OF FRANCES WALKER, APPELLANT,

V.

STANLEY STEFAN, APPELLEE.

FILED 06/15/2017
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

Appeal from the Superior Court
of the District of Columbia
(ADM-1834-99)

(Hon. Cheryl M. Long, Trial Judge)
(Hon. Rhonda Reid Winston, Trial Judge)
(Hon. John M. Campbell, Trial Judge)

(Argued November 1, 2016                    Decided June 15, 2017)

*Howard Haley* for appellant.

*Thomas J. Gagliardo* for appellee.

Before EASTERLY and MCLEESE, *Associate Judges*, and RUIZ, *Senior Judge*.

MCLEESE, *Associate Judge*:  Appellant, the estate of Frances Walker, challenges the trial court's ruling that appellee Stanley Stefan was entitled to funds from a bank account opened by Ms. Walker and Mr. Stefan.  We affirm.

**I.**

The following facts appear to be undisputed. Ms. Walker and Mr. Stefan, who were long-time friends, jointly opened a savings account in July 1998. The account contained approximately $183,000 at the time of Ms. Walker's death in September 1999. Only Ms. Walker contributed funds to the account. Mr. Stefan did not withdraw any funds from the account during Ms. Walker's lifetime, but he did withdraw funds from the account to pay for Ms. Walker's funeral expenses.

In November 1999, the estate's personal representative -- Ms. Walker's great-nephew, Eulse Cee Young, Jr. -- transferred the funds from the savings account to the estate's separate account. Mr. Stefan sued the estate, claiming among other things that Ms. Walker intended for him to have the funds in the account upon her death. The trial court granted summary judgment to the estate. In *In re Estate of Walker*, 890 A.2d 216, 224-25 (D.C. 2006), this court concluded that summary judgment was not warranted, because there were genuine issues of material fact regarding Ms. Walker's intent in establishing the account. We therefore remanded for further proceedings. *Id.* at 226. We specifically directed the trial court to consider on remand whether the Nonprobate Transfers on Death

Act, D.C. Code § 19-601.01 et seq., which went into effect in 2001, had any impact on the case. *Id.* at 221 n.5.

On remand, the parties agreed that the Act applied, but they disagreed as to the proper disposition of the funds at issue. The trial court interpreted the Act to create a presumption of a right of survivorship in multiple-party accounts. The trial court further concluded that the presumption had not been rebutted, because there was no express disclaimer of a right of survivorship in the account documents. Thus, the trial court concluded that the funds passed to Mr. Stefan as the surviving party.

The estate appealed, and we once again remanded, directing the trial court to make factual findings as to the parties' intent in establishing and maintaining the account. *In re Estate of Walker*, No. 08-PR-1638, Order (D.C. Jul. 30, 2010) (per curiam). We also noted that the trial court had not addressed whether Ms. Walker had given Mr. Stefan an interest in the account during her lifetime ("inter vivos"). *Id.*

On the second remand, the parties agreed that no additional facts needed to be found and that the trial court should decide the case on the existing record. The

trial court concluded that the clear weight of the evidence indicated that Ms. Walker intended for the funds in the account to pass to Mr. Stefan upon her death. The trial court therefore declared that Mr. Stefan owned the funds at issue by right of survivorship.

## II.

We briefly address two procedural issues raised by the estate. First, the estate contends that the trial court on the most recent remand should not have considered certain of Mr. Stefan's filings. We see no abuse of discretion. After the parties submitted cross-motions for judgment and cross-oppositions, the trial court rejected two of those filings as improperly formatted. Both parties resubmitted motions for judgment, but only the estate resubmitted a cross-opposition. Even assuming that Mr. Stefan's resubmitted motion for judgment was untimely and that Mr. Stefan should have resubmitted his opposition to the estate's motion for judgment, the trial court had discretion to consider those filings. *See In re Estate of Yates*, 988 A.2d 466, 468 (D.C. 2010) (under Super. Ct. Civ. R. 6 (b)(2), trial court may extend deadline upon showing of "excusable neglect"; "[W]hether a party's neglect is excusable is at bottom an equitable [question], taking into account all relevant circumstances surrounding the party's omission.

The factors a court considers include the danger of prejudice to other parties, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.") (brackets, ellipses, citation, and internal quotation marks omitted); *see generally Friendship Hosp. for Animals v. District of Columbia*, 698 A.2d 1003, 1006 (D.C. 1997) (if time limit is non-jurisdictional, trial court has discretion to entertain untimely motion).  In granting Mr. Stefan's resubmitted motion for judgment, which was substantially identical to the motion that had been timely submitted, the trial court noted that the original rejection of Mr. Stefan's motion was for "technical procedural failings."  Under the circumstances, and particularly given that the estate has not attempted to show that it suffered unfair prejudice as a result of the delay in resubmission, we see no basis for reversal.

Second, the estate contends that Mr. Stefan should be denied relief because Mr. Stefan did not properly raise the claim that he had a survivorship right in the funds.  We disagree.  Mr. Stefan has consistently claimed to have a survivorship right in the funds.  In his complaint, for example, Mr. Stefan asserted that "[i]t was Decedent's expressed intent that the account would be for the benefit of Plaintiff upon her death."  In any event, we directed the trial court to consider the right of

survivorship in connection with the first appeal, *In re Estate of Walker*, 890 A.2d at 221 n.5, and the litigation thereafter has focused primarily on whether Mr. Stefan had a right of survivorship. The trial court thus properly resolved the case on that basis.

## III.

Turning to the merits, we affirm the trial court's conclusion that the funds in the account belong to Mr. Stefan. First, we provide pertinent background. Second, we address the parties' arguments as to the proper interpretation of the Act. Third, we address the estate's contention that there was insufficient evidence to support the trial court's finding that Ms. Walker intended for the funds to pass to Mr. Stefan upon her death.

## A.

Before passage of the Act, multiple-party accounts opened by one party without consideration from the other were presumed to be created for the convenience of the first party, even where the account documents specified a right of survivorship. *In re Estate of Blake*, 856 A.2d 1151, 1154 (D.C. 2004). Thus,

funds deposited in a multiple-party account by a decedent were considered assets of the decedent's estate. *Id.* A second party on the account could obtain ownership of such funds only by proving by clear and convincing evidence that the first party had transferred the funds to the second party through a valid inter vivos gift. *Id.*

In 2001, the District enacted a version of the Uniform Nonprobate Transfers on Death Act. The Act, "[a]mong other things, . . . identifies different types of multiple-party accounts, recognizes the various purposes for which they might be held, and clarifies the rights and relationships among joint account holders, including survivorship rights." *In re Estate of Blake*, 856 A.2d at 1155 (footnote and internal quotation marks omitted). Three sections of the Act are most directly relevant to this appeal. First, D.C. Code § 19-602.03 (2012 Repl.) requires that all accounts, including those established before the Act went into effect, be categorized as one of several types of accounts -- namely, as "a single-party account or multiple-party account, with or without right of survivorship." D.C. Code § 19-602.03 (b). Second, D.C. Code § 19-602.04 (2012 Repl.) provides forms for the types of accounts listed in § 19-602.03. If an account's documents are not substantially similar to one of the provided forms, then the account is categorized as "the type of account that most nearly conforms to the depositor's

intent." D.C. Code § 19-602.04 (b). Third, D.C. Code § 19-602.12 (2012 Repl.) addresses the disposition of multiple-party account funds upon a party's death. The first part of that section states that "[e]xcept as otherwise provided in this subchapter, on death of a party sums on deposit in a multiple-party account belong to the surviving party or parties." D.C. Code § 19-602.12 (a). Section 19-602.12 (c) provides that "[s]ums on deposit . . . in a multiple-party account that, by the terms of the account, is without right of survivorship, are not affected by death of a party, but the amount to which the decedent, immediately before death, was beneficially entitled . . . is transferred as part of the decedent's estate."

Although the establishment of the account and Ms. Walker's death both preceded the effective date of the Act, we do not understand the parties to dispute that the Act applies to the account. *See generally In re Estate of Blake*, 856 A.2d at 1155-56 (applying Act to account established before Act went into effect).

In ruling for Mr. Stefan, the trial court reasoned along the following lines. The account documents in this case were not substantially similar to the forms provided in D.C. Code § 19-602.04 (a). Therefore, under D.C. Code § 19-602.04 (b), Ms. Walker's intent determined whether the account should be viewed as an account with or without right of survivorship. Based on the evidence before

it, the trial court concluded that Ms. Walker intended to create a multiple-party account with a right of survivorship.

**B.**

We are not persuaded by the estate's objections to the trial court's interpretation of the Act. First, the estate contends that it was entitled to prevail under D.C. Code § 19-602.12 (c), because the account in this case was by its terms without right of survivorship. More specifically, the estate argues that (1) at the time the account was created, the presumption was that such accounts did not confer a right of survivorship; (2) the account documents were silent on the issue; and (3) the account therefore should be understood as not conferring a right of survivorship. Our disagreement with the estate turns on the meaning of the phrase "by the terms of the account." For several reasons, we conclude that an account is without right of survivorship within the meaning of that phrase only if the account documents explicitly provide that the account does not confer a right of survivorship.

First, the Act defines the phrase "terms of the account" as including "the deposit agreement and other terms and conditions, including the form, of the

contract of deposit." D.C. Code § 19-602.01 (12) (2012 Repl.). This definition focuses on the explicit language of account documents, and points against the idea that the phrase as used in § 19-602.12 (c) would treat silence as establishing the absence of a right of survivorship. Moreover, the phrase "by the terms" is naturally understood to refer to express language. *See In re McCaffrey's Estate*, 20 N.Y.S.2d 178, 184 (Surr. Ct. 1940) ("The words 'by the terms of such revocation' are limited to a revocation in writing.").

Second, adopting the estate's reading would undermine a basic purpose of the Act. By creating standard forms for various types of accounts, and by creating a default rule that multiple-party accounts confer a right of survivorship, the legislature attempted to establish clearer and more predictable rules to govern the disposition of bank accounts. *See* D.C. Council, Report on Bill 13-298, at 3, 41-42 (Nov. 16, 2000) (stating generally that probate laws were in need of "modernization, clarification, simplification, and uniformity," and explaining that Act would "provide clear and simple directions"); *see also In re Conservatorship of Milbrath*, 508 N.W.2d 360, 363 (N.D. 1993) (purpose of provisions governing multiple-party accounts in Nonprobate Transfers on Death Act is to "provide simple non-probate alternatives for disposition of assets upon death of one party to a multiple-party account"). The exception in § 19-602.12 (c) fits comfortably with

the Act's purpose if the exception is limited to accounts that explicitly provide for no right of survivorship. If the exception were instead read to incorporate silence and other circumstances that might bear on the parties' intent as part of the account's "terms," then the exception would perpetuate the very complexity and uncertainty that the Act was intended to reduce.

Finally, the legislative history of the Act contradicts the estate's interpretation of § 19-602.12 (c). The Judiciary Committee report explains that "[s]ubchapter 2 establishes a preference for survivorship between the parties whether or not specified in the account contract. But if the account contract *expressly negates* survivorship rights . . . the surviving parties to the account do not take by right of survivorship." Report on Bill 13-298, at 42 (emphasis added). The report reaffirms this understanding in the section-by-section analysis, describing § 19-602.12 (a) as "mak[ing] an account payable to one or more of two or more parties to a survivorship arrangement unless a nonsurvivorship arrangement is *specified in the terms of the account*." *Id*. at 46 (emphasis added). In addition, the comment to the corresponding provision in the Uniform Nonprobate Transfers on Death Act describes the effect of subsection (a) as "mak[ing] an account payable to one or more of two or more parties a survivorship arrangement unless a nonsurvivorship arrangement is specified in the terms of the

account." Unif. Nonprobate Transfers on Death Act § 212 cmt. (Nat'l Conference of Comm'rs on Unif. State Laws 1990).

For the foregoing reasons, we conclude that because the account documents in this case do not expressly disclaim a right of survivorship, § 19-602.12 (c)'s exception does not apply.

## C.

The estate also challenges the trial court's finding, under D.C. Code § 19-602.04 (b), that Ms. Walker intended for the funds in the account to pass to Mr. Stefan upon Ms. Walker's death. We uphold the trial court's finding.

At the outset, the estate contends that Mr. Stefan was required to show by clear and convincing evidence that Ms. Walker intended Mr. Stefan to have a right of survivorship. In support of its argument, the estate relies primarily on D.C. Code § 19-602.11 (b) and *In re Estate of Blake*. Section 19-602.11 (b) (addressing "[o]wnership during lifetime") imposes the clear-and-convincing-evidence standard on a party to a multiple-party account who claims that another party to the account made an inter vivos gift to the claimant of some of the sums deposited by

that other party. The clear-and-convincing-evidence standard set forth in § 19-602.11 (b) does not by its terms apply to a claim that a multiple-party account was intended to create a right of survivorship upon the death of one of the account holders. In *In re Estate of Blake*, 856 A.2d at 1156, we applied § 19-602.11 (b)'s clear-and-convincing-evidence standard to a claim that the decedent had intended to make an inter vivos gift. *Blake* did not state that § 19-602.11 (b)'s clear-and-convincing-evidence standard would also properly apply to a claim that a decedent intended to confer a right of survivorship. We also note that § 19-602.12 (addressing "[r]ights at death"), which directly applies in this case, does not include a clear-and-convincing-evidence standard.

The trial court determined Ms. Walker's intent pursuant to § 19-602.04 (b) of the Act, which as previously noted directs the trial court to make a finding as to, among other things, the depositor's intent as to a right of survivorship. That provision does not expressly indicate which party bears the burden of proof on that issue or what the magnitude of that burden of proof should be. One court has interpreted an analogous provision to place a burden of proof by a preponderance on the party seeking to obtain possession of the proceeds in a disputed account. *See In re Estate of Greb*, 848 N.W.2d 611, 618 (Neb. 2014) ("[T]he party not in possession of the proceeds of a disputed account has the burden to move forward

with evidence of the depositor's intent in creating the account. And in a dispute regarding the ownership of an account arising from the depositor's death, such intent must be proved by a greater weight of the evidence only.") (footnote omitted).

We need not decide in this case either who bears the burden of proof on this issue under the Act or what the magnitude of that burden should be. In ruling for Mr. Stefan, the trial court found that "the clear weight of the available evidence" indicated that Ms. Walker intended for Mr. Stefan to receive the funds in the account upon her death. The estate has not contended that this finding is meaningfully different from a "clear and convincing evidence" finding. Thus, even assuming that the clear-and-convincing-evidence standard applies to the trial court's finding, we see no basis for remanding for the trial court to announce a finding framed explicitly in those terms. *Cf. In re Adoption of J.S.R.*, 374 A.2d 860, 864 (D.C. 1977) ("[W]e are satisfied that the standard enunciated by the trial court, *i.e.*, 'substantial preponderance' of the evidence and the one we establish herein, *i.e.*, 'clear and convincing' evidence, are substantially identical. Thus, there is no occasion to remand to the trial court for consideration in light of this opinion.").

The estate also contends that the evidence is insufficient to support a finding that Ms. Walker intended Mr. Stefan to receive the funds in the account upon her death. We disagree. After the second remand, the parties asked the trial court to take the facts in the record as undisputed. The trial court thus conducted what amounted to a trial on stipulated evidence.

Mr. Stefan relies on evidence supporting a conclusion that Ms. Walker wanted the funds to pass to Mr. Stefan upon her death. Ms. Walker told the bank manager that she wanted to remove her great-nephew (Mr. Young) from a prior multiple-party account. There was evidence that Ms. Walker was angry at Mr. Young, and both Mr. Stefan and the bank manager recalled Ms. Walker saying she did not want Mr. Young to have "one red cent." When Ms. Walker was told she could not simply remove Mr. Young from the account, she closed that account, withdrew the funds, and deposited those funds into the multiple-party account that she opened with Mr. Stefan. Ms. Walker set up the new multiple-party account with full knowledge that Mr. Stefan could withdraw funds from the account at any time.

The estate relies on evidence pointing in the opposite direction. Specifically, the estate points to evidence that Ms. Walker initially tried to include both the bank

manager and Mr. Stefan as co-owners on the account, and to Mr. Young's testimony at a deposition that Ms. Walker had always used multiple-party accounts, simply for the sake of convenience.

The trial court analyzed the evidence and made the following findings: (1) Ms. Walker clearly wanted to remove Mr. Young from the account; (2) Ms. Walker could have set up an account in her own name, but chose to add Mr. Stefan instead; (3) Ms. Walker's statement that she did not want Mr. Young to get "one red cent" strongly suggested that Ms. Walker wanted the funds to pass to Mr. Stefan rather than to her great-nephew; and (4) Ms. Walker knew that Mr. Stefan could withdraw the sums on deposit at any time. The trial court also found that Ms. Walker's attempt to add the bank manager to the account merely reflected her desire to have a personal steward for the account, rather than serving as an indication that Ms. Walker did not intend for Mr. Stefan to have a survivorship right.

We review a trial court's findings of fact for clear error. *Thai Chili, Inc. v. Bennett*, 76 A.3d 902, 909 (D.C. 2013). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."

*Abulqasim v. Mahmoud*, 49 A.3d 828, 834 (D.C. 2012) (internal quotation marks omitted). "[W]here the evidence [is] such that either one of two different conclusions might reasonably have been drawn from it, the decision is for the trial court; and the appellate court may not reweigh the evidence or override the findings, except where it clearly appears they are manifestly wrong." *Palmer v. Garves*, 123 A.2d 611, 612 (D.C. 1956) (internal quotation marks and ellipses omitted). We find no error in the trial court's finding that Ms. Walker intended for the account to have a right of survivorship, because there was sufficient evidence to support that finding. *Cf. Khawam v. Wolfe*, 84 A.3d 558, 563 n.2 (D.C. 2014) (trial court did not commit clear error in making findings based on conflicting evidence).[1]

---

[1] At times, Mr. Stefan seems to suggest that the trial court should have ruled in his favor on an alternative rationale. Specifically, Mr. Stefan argues that D.C. Code § 19-602.12 (a) creates a presumption that a multiple-party account confers a right of survivorship, and that presumption can be rebutted only if the "terms of the account" provide otherwise, D.C. Code § 19-602.12 (c). Mr. Stefan further argues that because the account documents in this case were silent as to a right of survivorship, the account did not by its terms rebut the statutorily presumed right of survivorship. Under this rationale, Ms. Walker's intent would be irrelevant. Although § 19-602.12 (a) does create a default rule that multiple-party accounts confer a right of survivorship, it also states that the default rule is inapplicable if other provisions in the subchapter "otherwise provide[]." Arguably, § 19-602.04 (b) provides otherwise in the circumstances to which it applies. Unif. Nonprobate Transfers on Death Act § 212 cmt. (Nat'l Conference of Comm'rs on Unif. State Laws 1990) (provisions corresponding to D.C. Code §§ 19-604.04 and .12 "permit a court to implement the intentions of parties to a joint account governed by [the provision corresponding to D.C. Code § 19-606.04 (b)]" based on

(…continued)

The judgment of the trial court is therefore

*Affirmed.*

---

(…continued)

the form of the account and "extrinsic evidence tending to confirm or contradict intention as signalled by the form"). In any event, the rationale suggested by Mr. Stefan and the approach taken by the trial court both lead to the conclusion that Mr. Stefan is the owner of the funds at issue. Thus, we need not decide the precise scope of the default rule (or presumption) created by the statute with respect to the rights of survivorship in multiple-party accounts.