*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 18-PR-1236

EMMA GOVAN, APPELLANT,

V.

SUNTRUST BANK, *et al.*, APPELLEES.

Appeal from the Superior Court
of the District of Columbia
(2017-LIT-000020)

(Hon. Gerald I. Fisher, Trial Judge)

(Submitted June 3, 2021                    Decided February 23, 2023)

*Johnny M. Howard* was on the brief for appellant.

*Christopher G. Hoge* and *Elena Iuga* were on the brief for appellee Julie Ebner Brown, personal representative of the Estate of Emil Ebner.

*Robert E. Grant* and *James P. Lillis* submitted a memorandum in lieu of brief for appellee Holy Comforter St. Cyprian Roman Catholic School declaring its intent not to participate in the appeal.

Before BLACKBURNE-RIGSBY, *Chief Judge*, and EASTERLY and DEAHL, *Associate Judges*.

EASTERLY, *Associate Judge*: Emil Ebner died in 2013, leaving behind a significant amount of wealth and a battery of bank account contracts, wills, and codicils. This interpleader appeal concerns the disposition of three bank accounts.

Two of these accounts—the 2360 and 6409 accounts—were in both Mr. Ebner's name and the name of his neighbor and friend, Emma Govan. At a bench trial, the Superior Court evaluated these accounts under the Uniform Nonprobate Transfers on Death Act (UNTDA), D.C. Code § 19-601 et seq., and rejected Ms. Govan's argument that the accounts carried a right of survivorship, which would allow the sums on deposit to pass to her outside of Mr. Ebner's estate. The third account— the 8554 account—was in the name of Ms. Govan and her siblings. The trial court concluded it was a gift to Ms. Govan's siblings subject to the unmet condition precedent that Ms. Govan pre-decease Mr. Ebner, and that it accordingly became part of Mr. Ebner's estate when he pre-deceased her.

Many of Ms. Govan's challenges to the trial court's judgment can be addressed with relative ease and alone would not necessitate discussion in a published opinion. We distinguish from this group her challenge to the trial court's determination that the contracts of deposit for the 2360 and 6409 accounts were not substantially in the form provided in § 19-602.04(a) of the UNTDA, thus justifying its consideration of Mr. Ebner's intent for these accounts under § 19-602.04(b). We recently examined § 19-602.04(a) in *In re Estate of Fulton*, 287 A.3d 253 (D.C. 2023). Building on that analysis, we agree with the trial court's determination that accounts 2360 and 6409 were not substantially in the form provided in § 19-

604.02(a), albeit for somewhat different reasons than the trial court articulated. Nonetheless we conclude remand is required for further assessment of Mr. Ebner's intent under § 19-602.04(b). We otherwise affirm.

## I. Facts and Procedural History

Subsequent to the trial proceedings in this case, our court considered and rejected a challenge to Mr. Ebner's 2013 will in *Govan v. Brown*, 228 A.3d 142 (D.C. 2020). Having discussed the underlying facts in some detail in our decision in the 2013 will contest case, we review here only the facts and procedural history most salient to this appeal.

The story begins at some unknown time no later than 2002, when SunTrust Bank savings account 6409 was opened in both Mr. Ebner and Ms. Govan's names. There is no contract of deposit for the account in the record. Ms. Govan does not dispute that the funds in this account "belonged to Emil Ebner before his passing."

In 2002, Mr. Ebner executed a will. The Fourth Article of the 2002 will

> confirm[ed] [his] intention that the beneficial interest in personal property, tangible or intangible, including any bank or brokerage accounts, which is registered or held, at the time of [his] death, jointly in the name of [himself] and

any other person, . . . shall pass by right of survivorship or operation of law and outside of the terms of this Will to such other person or persons, if he, she or they survive [him].

The will also named Mr. Ebner's niece, Julie Brown, as the personal representative, and another niece, Lisa Winters, as the successor personal representative of Mr. Ebner's estate.

Mr. Ebner executed codicils to the 2002 will in 2007 and 2010. The most significant change effected was in the 2010 codicil, which created an exception to the Fourth Article's right of survivorship provision: it stated that there was no "presumption of joint ownership for treasury bills held jointly in [Mr. Ebner's] name and the name of Emma Govan," and "direct[ed] [the] Personal Representative to utilize funds from the sale of these treasury bills to cover all costs of administration of [Mr. Ebner's] estate as well as federal and state taxes."

Subsequently, in November 2010, Mr. Ebner opened the SunTrust Bank money market account 8554 in the name of Ms. Govan and her siblings. No contract of deposit has been produced for this account, but it is undisputed that Mr. Ebner was the sole depositor of funds into this account.

Several months after that, in May 2011, Mr. Ebner added Ms. Govan's name

to the existing SunTrust checking account 2360. The account had originally been in the names of Mr. Ebner, Ms. Brown, and Ms. Winters, but Mr. Ebner removed his nieces' names from the account. The 2360 account is better documented than the others: the record shows that Mr. Ebner and Ms. Govan signed a "Personal Account Signature Card"—a full page containing account information—which reflects that the account was revised by "[c]lient [r]equest." Below the signatures, the card states the signer "shall be governed by the rules and regulations for this account and the above signed hereby acknowledge(s) receipt of such rules and regulations." Below that, the signature card also contains a notice specifically "[f]or residents of . . . Washington D.C.," explaining that "[j]oint accounts can be either with or without survivorship" and instructing the reader to "[c]hoose" one of the options. It further explains that "'With Survivorship' means that if one owner dies, the surviving owner(s) become the sole owner of the account. 'Without Survivorship' means that if one owner dies, the surviving owner and the decedent's estate own the account." Neither Mr. Ebner nor Ms. Govan checked either box, and neither signed their name on the additional lines provided below these boxes.

In 2013, Mr. Ebner executed another will. Without objection from Ms. Govan, the estate submitted a copy of this 2013 will to this court in its Supplemental Appendix, although this will was not part of the record below because

the trial court had denied its admission to probate. *See Govan*, 228 A.3d at 148-49. The 2013 will "deviated" in "significant respects" from the 2002 will. *Id.* at 146.

Mr. Ebner died on December 27, 2013. After Ms. Govan and Mr. Ebner's estate sought to exercise conflicting claims to Mr. Ebner's many bank accounts, including the 2360, 6409, and 8554 accounts, SunTrust Bank filed an interpleader action in Superior Court, *see* Super. Ct. Civ. R. 22, seeking direction about where to release the funds and naming Mr. Ebner's estate, Ms. Winters, Ms. Brown, and Ms. Govan as co-defendants.[1]

Also by this time, "Ms. Govan [had] filed a complaint seeking to set aside the August 2002 will and codicils and to enter the 2013 will into probate" (before the

---

[1] "The principle of interpleader is that, where two persons are engaged in a dispute, and that which is to be the fruit of the dispute is in the hands of a third party, who is willing to give it up according to the result of the dispute, then, . . . that third person . . . is not to be obliged to be at the expense and risk of defending an action; but, on giving up the thing . . . , he is to be relieved, and the Court directs that the persons between whom the dispute really exists shall fight it out at their own expense." 7 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1702 (3d ed. Supp. 2022) (internal quotation marks omitted); *see also* Comment, Super. Ct. Civ. R. 22 (noting that the District's rule is "substantially similar" to the federal interpleader rule). Thus, "[i]t is well settled that each defendant in an interpleader action must prove his claim by a preponderance of the evidence." *Day v. Kerley*, 146 A.2d 571, 573 (D.C. 1958) (internal quotation marks omitted); *accord* 7 Wright & Miller, *Federal Practice and Procedure* § 1714.

same trial judge who presided over the instant case on appeal). *Govan*, 228 A.3d at 148. In April 2017, the trial court ruled in the will contest suit that Mr. Ebner's 2013 will was inadmissible to probate. *See id.* at 149. It found that, although there was insufficient evidence that Ms. Govan had unduly influenced Mr. Ebner to execute the 2013 will (as alleged by the estate), *id.* at 149 n.5, there was sufficient evidence that Mr. Ebner lacked capacity to execute the will, *id.* at 149. Ms. Govan appealed this judgment; meanwhile, the interpleader action initiated by SunTrust proceeded.[2]

The trial court issued its judgment in the interpleader action in October 2018. It concluded that the 2360 and 6409 accounts were estate assets to be disposed of under Mr. Ebner's 2002 will. It further concluded that the 8554 account had been a gift to Ms. Govan's siblings subject to the condition precedent that Ms. Govan pre-decease Mr. Ebner; and that since the condition had not been met, the 8554 account became part of Mr. Ebner's estate. Ms. Govan timely appealed. After the submission of her brief and before the estate had submitted its brief, this court issued its decision in the separate 2013 will contest case. We concluded there was insufficient evidence to "rebut Mr. Ebner's testamentary capacity, which is

---

[2] In January 2018, the trial court released SunTrust from this suit without prejudice, concluding that the bank did not "really . . . hav[e] a status in this litigation other than that they're holding the money"; it directed the bank, however, to continue holding the disputed funds.

presumed" and reversed the trial court's invalidation of Mr. Ebner's 2013 will. *Govan*, 228 A.3d at 145. Accordingly, in March 2021, the trial court admitted the 2013 will to probate, by which time the parties had already completed briefing in the instant appeal.

## II. Ms. Govan's Procedural Claims

We first address Ms. Govan's procedural challenges to the trial court's ruling regarding the disposition of three bank accounts initially opened by Mr. Ebner. She argues that the estate's claims of ownership of all three accounts are time-barred; the trial court was impermissibly biased in favor of the estate; and the trial court's findings in the 2013 will contest case should have precluded the instant findings with respect to the 2360 and 6409 accounts. None of these arguments are persuasive.

### A.     Statute of Limitations

The trial court ruled that the present interpleader action was not barred by a statute of limitations for two reasons: first, because Ms. Govan failed to cite a particular statute of limitations to support her argument that the estate's claims were time-barred (raising this claim for the first time nearly a year and a half after

SunTrust filed its interpleader, Ms. Govan only made reference to an unspecified "three[-]year statutory" provision); and second, because "Ms. Govan is not in possession of those accounts. SunTrust is. And the demand was made on SunTrust by the estate . . . by answering the complaint in this proceeding" as well as by filing an earlier suit in Maryland. We review Ms. Govan's challenge to the court's ruling de novo. *Cf. Daniels v. Potomac Elec. Power Co.*, 100 A.3d 139, 142-43 (D.C. 2014) ("[E]xpiration of the statute of limitations is a question of law." (internal quotation marks omitted)); *In re Estate of Green*, 816 A.2d 14, 16 (D.C. 2003) (reviewing de novo an interpretation of D.C. Code § 12-301).

On appeal, Ms. Govan re-asserts her claim that the estate's claims of ownership within the SunTrust interpleader action are time-barred. She now cites the District's "catch-all" statute of limitations, D.C. Code § 12-301(8), which states that "actions for . . . which a limitation is not otherwise specially prescribed" "may not be brought after the expiration of . . . 3 years." She submits, without justification, that this "catch-all" provision applies to and renders untimely the estate's claims of ownership of all three accounts in this interpleader action.

"Interpleader is a long established equitable remedy designed to avoid multiplicity of claims and circuity of action. Its foundations are in equity . . . ."

*Nixon v. Life Ins. Co. of Va.*, 124 A.2d 305, 306 (D.C. 1956)[3] (internal citation omitted). "[W]here the equity jurisdiction is exclusive and is not exercised in aid or support of a legal right, state statutes of limitations barring actions at law are inapplicable . . . ." *Cassell v. Taylor*, 243 F.2d 259, 261 (D.C. Cir. 1957) (internal quotation marks omitted); *cf. Naccache v. Taylor*, 72 A.3d 149, 155 (D.C. 2013) (explaining that claims at law are "governed by statutes of limitations that have been decided upon by the legislature" while the defense of laches applies to equitable claims). Before this court, Ms. Govan provides no support for her argument that the estate's claims of ownership within SunTrust's interpleader action should be subject to a statute of limitations, much less any support for her assertion we should apply the statute of limitations in D.C. Code § 12-301(8). Absent any such arguments, we discern no basis for Ms. Govan's statute of limitations defense and we affirm the trial court's rejection of it.

---

[3] *See Thoma v. Kettler Bros., Inc.*, 632 A.2d 725, 727 n.5 (D.C. 1993) (explaining that the Municipal Court of Appeals for the District of Columbia and then the D.C. Circuit were predecessors of this court and a decision of the Municipal Court "is therefore binding on a division of this court unless overruled en banc or unless it is inconsistent with (hence was effectively overruled by) a subsequent decision of the [D.C. Circuit] issued before February 1, 1971."); *see also M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C. 1971) ("[D]ecisions of the United States Court of Appeals rendered prior to February 1, 1971, . . . like the decisions of this court, constitute the case law of the District of Columbia.").

## B.  Bias

For the first time on appeal, Ms. Govan alleges that "[t]hroughout the proceedings, the trial judge exhibited an impermissible bias and was not reasonably fair in his rulings." The only factual foundation she provides for this argument is a number of rulings that she asserts manifest bias "in favor of the familial relationship between [Ms. Brown] and Emil Ebner" essentially because they were not in her favor. In light of our demanding standard of review for unpreserved arguments, *Pajic v. Foote Props., LLC*, 72 A.3d 140, 145 (D.C. 2013) (explaining that we will only entertain unpreserved arguments "in exceptional situations and when necessary to prevent a clear miscarriage of justice apparent from the record" (internal quotation marks omitted)), and our high threshold for judicial bias claims based on a trial court's adverse rulings alone, *Plummer v. United States*, 870 A.2d 539, 547 (D.C. 2005) ("In all but the most extreme cases, rulings during courtroom proceedings do not constitute evidence of judicial bias."), this claim fails.

## C.  Issue Preclusion

Ms. Govan's final procedural argument is that the trial court's findings in the 2013 will contest case with respect to Mr. Ebner's capacity to move money across

his bank accounts preclude the estate's claims to ownership of the 2360 and 6409 accounts. Citing no case law, she exclusively relies on a passage of the court's findings, taken out of context, in which the court stated that:

> [Mr. Ebner] knew what it meant to have somebody be the co-owner of an account, and, even though[] he may have shifted significant sums of money in favor of M[s.] Govan[] in the months before he died, [the court didn't] . . . see [any evidence] . . . that he didn't understand what he was doing . . . [or] that there was any undue influence upon him to do that.[4]

These remarks do not support an argument that the issue of ownership of the accounts or disposition of funds under the UNTDA has already been "actually litigated" and "determined by a valid and final judgment," *Carr v. Rose*, 701 A.2d 1065, 1076 (D.C. 1997) (internal quotation marks omitted), two of the requirements for issue preclusion. The suggestion that the trial court made a finding that Mr. Ebner in fact intended Ms. Govan to have a right of survivorship in the 2360 and 6409 accounts is refuted by a fuller examination of the court's remarks. The court prefaced the language Ms. Govan quotes with a statement indicating it was specifically resolving whether "the transfer of assets into the joint accounts with

---

[4] Although we reversed the trial court's denial of Mr. Ebner's 2013 will to probate, we did not disturb its other findings (i.e., those findings that Ms. Govan claims have preclusive effect here), *Govan*, 228 A.3d at 145; it does not appear either party had challenged them.

[Ms.] Govan were the result of undue influence or that Mr. Ebner lacked capacity to understand and make those transactions." The fact that the court concluded that Mr. Ebner had voluntarily and knowingly put his money in joint accounts with Ms. Govan does not resolve the categorization of those joint accounts under the UNTDA or her right to the sums on deposit after Mr. Ebner's death. As the trial court explained in rejecting Ms. Govan's issue preclusion argument:

> the determination of the ownership of [the 2360 and 6409 accounts] was not before [the court] in the [2013 will contest case] . . . . No claims or defenses regarding the bank accounts were raised by the parties in that litigation . . . [and the court] didn't decide . . . the question of ownership of the accounts.

We thus affirm the trial court's rejection of Ms. Govan's issue preclusion argument.

### III. Ms. Govan's Claims Regarding Ownership of the 2360, 6409, and 8554 Accounts

We turn next to Ms. Govan's merits arguments regarding ownership of the 2360, 6409, and 8554 accounts. Ms. Govan argues that the 2360 and 6409 accounts are nontestamentary assets that pass to her by right of survivorship under the UNTDA, and she contends that account 8554 was delivered to her as a completed *inter vivos* gift. The trial court's contrary ruling that the 2360 and 6409 accounts are testamentary assets rests both on its interpretation of the UNTDA and on its factual

assessment of Mr. Ebner's intent; its contrary ruling that account 8554 was a gift to Ms. Govan's siblings subject to the unmet condition precedent that she pre-decease Mr. Ebner likewise rests on determinations of both law and facts. In our review of a judgment following a bench trial, we review legal conclusions de novo, including "[t]he construction of a statute." *Reed v. Rowe*, 195 A.3d 1199, 1204 (D.C. 2018) (internal brackets and quotation marks omitted). But with respect to factual findings, "we view the evidence in the light most favorable to the prevailing party and we defer to the trial court's credibility determinations unless they are clearly erroneous. . . . [W]here the facts admit of more than one interpretation, we must defer to the trial court's judgment." *Id.* (cleaned up).

### A.     The 2360 and 6409 Accounts

Because the trial court's ruling as to the 2360 and 6409 accounts was predicated on the District's UNTDA, we begin with an overview of that statutory scheme. As we recently explained in *In re Estate of Fulton*, 287 A.3d 253 (D.C. 2023):

> Under the District's common law, joint bank account holders owned their respective deposited funds during their lifetimes, and upon death of one account holder, the decedent's contributions to the account were treated as assets of the decedent's estate unless the survivor-claimant established ownership of the funds by virtue of a

valid *inter vivos* gift. . . . This common-law prohibition on recognizing a right of survivorship within a joint account itself was discarded, however, with the passage of the District's [UNTDA] . . . . [which] was intended to effectuate the passage of funds in a joint account to the remaining account holders . . . outside of probate even though no *inter vivos* gift was ever made.[5]

*Estate of Fulton*, 287 A.3d at 255-56 (internal citations and quotation marks omitted). In addition to retiring these common-law rules regarding the after-death disposition of funds from joint accounts, the UNTDA aimed to "establish clearer and more predictable rules to govern the disposition of bank accounts" and reduce "complexity and uncertainty." *In re Estate of Walker v. Stefan*, 160 A.3d 1165, 1170 (D.C. 2017). The UNTDA applies to all accounts "established before, on, or after the effective date of this chapter [April 27, 2001], whether in the form prescribed in section 19-602.04 or in any other form." D.C. Code § 19-602.03(b).

"Giving account holders the opportunity to make express, informed choices

---

[5] Ms. Govan argues that the trial court erred in failing to consider D.C. Code § 19-601.01, the stage-setting provision of the UNTDA that announces the statute's departure from the common law and states that "[a] provision for a nonprobate transfer on death in an . . . account agreement . . . is nontestamentary." We see no indication that the trial court failed to consider this provision. The court did not reject the proposition that it is possible to make a nonprobate transfer of deposited funds in a joint bank account; the court simply determined, based on the record of this case and looking to other provisions of the UNTDA discussed below, that no nonprobate transfer had been effected.

was a central objective of the D.C. UNTDA." *Estate of Fulton*, 287 A.3d at 265 & n.1 (Easterly, J., concurring). To this end, D.C. Code § 19-602.04(a) provides a model "account form" and explains that, if the provisions of a bank account's "contract of deposit" are "substantially" in the form provided, the account will be "governed by the provisions [of the UNTDA] applicable to an account of that type." D.C. Code § 19-602.04(a). The form allows the account holder to select from a menu of defined options regarding (1) "ownership": allowing a choice between a "single-party account" or "multiple-party account"; (2) "rights at death": allowing a choice between "single-party account," "single-party account with POD (pay on death) designation," "multiple-party account with right of survivorship," or "multiple-party account without right of survivorship"; and (3) "agency": allowing for the identification of one or more agents as well as a choice that either "agency designation survives disability or incapacity of parties" or "agency designation terminates on disability or incapacity of parties." *Id.* (capitalization omitted). If the contract of deposit does not "substantially" follow the model, then § 19-602.04(b) provides that disposition will be governed by the UNTDA provisions "applicable to the type of account that most nearly conforms to the" decedent's intent. *Id.* § 19-602.04(b); *see also id.* § 19-602.12(a) (providing that "[e]xcept as otherwise provided in this subchapter," referring inter alia to § 19-602.04, a multiple-party account carries a right of survivorship); *id.* § 19-602.12(c) (providing that a right of

survivorship may be negated "by the terms of the account"); *Estate of Fulton*, 287 A.3d at 263-64(explaining the interaction of §§ 19-602.04 and 19-602.12(a) & (c)).

Regarding the 2360 account, the trial court noted that the signature card only "ask[ed] the account holder to check and initial one of two options": whether the account is a multiple-party account with a right of survivorship or whether the account is a multiple-party account without a right of survivorship.  The court also found that the explanation of "without survivorship" on the signature card diverged from the explanation in § 19-602.04(a) and was "contrary to D.C. law."  Lastly, the court noted that, although Mr. Ebner signed the bank's signature card, he did not check or put his signature below either option provided regarding survivorship, and the court further observed that the form on the signature card did not advise him of the consequence of failing to select an option.  For these reasons, the court concluded that the bank's signature card for the 2360 account "f[e]ll[] short of [§] 19-602.04's requirement[s]."  The court declined to look beyond the signature card to the bank's "Rules and Regulations For Deposit Accounts" ("Rules and Regulations"), finding that the Rules and Regulations document was "internal to SunTrust" and "not explained to the account holder."

First, we disagree with the trial court that the explanation of the "without survivorship" options in the signature card and the model form do not align. To be sure, the signature card and the model form are phrased differently, but the meaning is the same. The 2360 account signature card states that "'[w]ithout [s]urvivorship' means that if one owner dies, the surviving owner and the decedent's estate own the account." The UNTDA model form states that "[w]ithout [s]urvivorship" means that "[a]t death of party, deceased party's ownership passes as part of deceased party's estate." D.C. Code § 19-602.04(a). Read in the context of other provisions—specifically § 19-602.11(b) providing that when the parties are all alive, the account belongs to them "in proportion to the net contribution of each to the sums on deposit," *id.*, and § 19-602.12(c) providing that when the parties die, "[s]ums on deposit . . . *are not affected by the death of a party*" if the account is without right of survivorship, *id.* (emphasis added)—it is clear that the 2360 signature card and the UNTDA model form are saying the same thing: when a party to a multiple-party account without survivorship dies, the parties' ownership shares are undisturbed.[6]

---

[6] We grant it is theoretically possible for the signature card's reference to the shared ownership that arises without a right of survivorship to refer to something other than that contemplated by the UNTDA (e.g., an equal division rather than in proportion to individual contributions), but we conclude that is not a plausible interpretation of the provision under the circumstances and in any event, no one has argued that this is the basis of a lack of substantial similarity.

Second, we disagree that the absence of an explanation on the bank's signature card of the "legal consequences" of failing to make a selection from the choices provided is a basis for concluding that the signature card failed to fulfill the requirements of D.C. Code § 19-602.04(a). While it would no doubt be helpful to provide this information, the absence of such an explanation on the signature card cannot be a basis for concluding that it is not substantially in the form provided by § 19-602.04(a), because the statutory model is likewise lacking in this regard.[7]

We agree, however, with the trial court's assessment that the bank's signature card was not substantially in the form provided by § 19-602.04(a) because it does not offer the account holder the full range of choices that the model form does. The form in § 19-602.04(a) offers choices regarding ownership, rights at death, and agency, whereas the bank's form only offers choices regarding rights at death.

---

[7] Mr. Ebner's estate argues that Mr. Ebner's lack of selection is itself a reason that the contract of deposit does not substantially comply with § 19-602.04(a). We disagree. The key to compliance with § 19-602.04(a) is that the account holder has been given the opportunity to make these choices about the disposition of deposited funds, see *infra*, not whether the account holder avails himself of that opportunity. When a contract of deposit is in substantially the form set forth in § 19-602.04(a), but no selections have been made, the court should then look to § 19-602.12(a) and (c) to determine how to categorize the account. *Cf. Estate of Fulton*, 287 A.3d at 263-64 (explaining that these provisions may fill in where other sections of the UNTDA, like § 19-602.04(b), do not "otherwise provide" (internal quotation marks omitted)).

Moreover, within "rights at death," the model form allows the account holder to select from five options—"single-party account," "single-party account with POD (pay on death) designation," "multiple-party account with right of survivorship," "multiple-party account with right of survivorship and POD (pay on death) designation," or "multiple-party account without right of survivorship"—whereas the signature card offers just two—a multiple-party account with a right of survivorship and a multiple-party account without the right of survivorship. Because the signature card provides only a fraction of the menu of options available on the model form, it cannot be "substantially" in the form provided in § 19-602.04(a).

The deficiencies in the signature card for the 2360 account are not cured by consideration of the bank's Rules and Regulations document proffered by Ms. Govan. As we explained in *Estate of Fulton*, a bank's rules and regulations might be part of a contract of deposit for the purposes of § 19-604.02(a) if they are part of the bank's agreement with the account holder under blackletter contract principles. *Estate of Fulton*, 287 A.3d at 259-60. It is unclear whether the trial court relied on such principles in concluding that the Rules and Regulations could not be considered; in particular we see no indication that the trial court assessed the import of the language on the signature card seeming to acknowledge and bind the signer to these Rules and Regulations. But even if we assume that the bank's Rules and

Regulations are part of the contract of deposit for the 2360 account, it would not change the outcome in this case.

To be sure, the Rules and Regulations provide some additional explanatory information. For example, they define payable-on-death accounts and note (without explanation of the mechanics) that the account owner "may designate one or more beneficiaries"; and elsewhere the Rules and Regulations explain agency accounts and the power of attorney, noting the documentation that the bank may require for such designations. But the recognition of these options is scattered throughout a 24-page document that never cues the account holder to make a selection; places the burden on the account holder to take additional steps and request additional forms to choose these options; and thus effectively establishes defaults that the account will be without either a POD beneficiary or an agency designation.[8] Thus, even assuming the Rules and Regulations are properly considered, the contract of deposit for the 2360 account did not give Mr. Ebner "the opportunity to make express, informed choices" by "set[ting] out a number of decision points and provid[ing] a space to the side of each where the account holder can . . . indicate a selection," and thus it was not "substantially" in the form set forth in § 19-604.02(a). *Estate of*

---

[8] It appears from the documentation for other accounts in the record that there is a separate form for SunTrust POD designations. We see no such form for the 2360 account, however, in the record on appeal.

*Fulton*, 287 A.3d at 265-66 (Easterly, J., concurring). *See generally id.* (opining that a default presumption of survivorship in a proffered bank manual would not have met the requirements of D.C. Code § 19-602.04(a)); *see also id.* at 266 n.2 (citing cases, including *In re Estate of Greb*, 848 N.W.2d 611, 619 (Neb. 2014), that so hold based on analogous statutes); *In re Estate of Blake*, 856 A.2d 1151, 1155 & n.7 (D.C. 2004) (quoting the Judiciary Committee report noting the statute's purpose to "allow the depositor to distinguish among the different functions of the multiple-person account").

Our analysis regarding the 6409 account is much simpler. Unlike the 2360 account, the court was provided with no signature card or other documents regarding the opening of this account. And, again, even if we were to consider the Rules and Regulations, for the same reasons discussed above, that document would be of little assistance in establishing that the contract of deposit for the 6409 account was in substantially the same form as the model in § 19-602.04(a).

For these reasons, we conclude the trial court did not err in undertaking to ascertain Mr. Ebner's intent for the disposition of both the 2360 and 6409 accounts pursuant to D.C. Code § 19-602.04(b). To determine Mr. Ebner's intent with respect to these accounts, the trial court looked at the 2002 will, the 2010 codicil,

Mr. Ebner's own actions,[9] and Ms. Govan's statements in the previous trial. This analysis, however, was incomplete in two respects. First, as noted above, there remains a question whether the Rules and Regulations proffered by Ms. Govan are in fact part of a binding contract of deposit[10] in which Mr. Ebner manifested his intent for a right of survivorship for Ms. Govan (a question that stands apart from whether that contract of deposit substantially conformed to § 19-602.04(a)). Second, there is the matter of Mr. Ebner's 2013 will which the trial court did not consider because this court had not yet issued our decision holding that it should be admitted

---

[9] The court found that "[a]ll the evidence that was presented at trial was to the effect that this account was used as a convenience account for Mr. Ebner." Under the UNTDA, during the parties' lifetimes, parties own funds in a multiple-party account "in proportion to the net contribution of each to the sums on deposit," D.C. Code § 19-602.11(b), and there is no question that the funds in the 6409 account "belonged to Emil Ebner before his passing." The question is what was intended to happen to the funds after death. That an account is used for the convenience of the first party during their lifetime does not necessarily mean there is no intent for a multiple-party account to have a right of survivorship.

[10] Again, blackletter contract principles apply. *See Isaac v. First Nat'l Bank of Md., D.C.*, 647 A.2d 1159, 1161-62 (D.C. 1994) ("[A] party faced with a clear written agreement must allege and prove fraud, duress, or mutual mistake to negate the disputed provision."); *Riggs Nat'l Bank of Wash., D.C. v. District of Columbia*, 581 A.2d 1229, 1251 (D.C. 1990) ("[A] contract [between a bank and its depositors] may be one of adhesion, and is therefore subject to judicial scrutiny for unconscionability."); *see also, e.g., Geiger v. Crestar Bank*, 778 A.2d 1085, 1094 (D.C. 2001) (holding a party to terms in "Rules and Regulations" mentioned multiple times in account documents where the party "acknowledged that he received a copy" of the relevant documents).

to probate.[11]  Accordingly, we vacate the trial court's ruling pursuant to D.C. Code § 19-602.04(b) regarding Mr. Ebner's intent for the disposition of these two accounts and remand for further consideration of this issue.

## B.      The 8554 Account

The trial court found that the 8554 account was a gift to Ms. Govan's siblings subject to the unmet condition precedent that Ms. Govan pre-decease Mr. Ebner.  It averred that this "made a great deal of sense at the time the account was open" because "in his will Mr. Ebner had left Ms. Govan two pieces of real property and moneys from other accounts but only if she survived him.  If she didn't survive him, her relatives, with whom Mr. Ebner had relationships and affection, would not have . . . gained any assets."  As the basis for these findings, the trial court appeared to

---

[11] We note that Ms. Govan appears to seek to make an argument under D.C. Code § 19-602.13(b), which provides that "[a] right of survivorship arising from the express terms of the account [or] section 19-602.12 . . . may not be altered by will." *Id.*  After quoting the statute's text, she highlights that the Rules and Regulations assume a right of survivorship, and then references § 19-602.12(c) which discusses when accounts are expressly without right of survivorship.  Ms. Govan does not explain how these juxtaposed quotes of statutory provisions are connected to each other or the trial court's decision.  It is not our job to develop Ms. Govan's argument. *See Comford v. United States*, 947 A.2d 1181, 1188 (D.C. 2008).  If she seeks to make a point that bears on the issues to be addressed on remand, she may clarify her point at that time. *Cf. District of Columbia v. Wical Ltd. P'ship*, 630 A.2d 174, 182 (D.C. 1993) (declining to provide guidance for issues that "may or may not arise" on remand).

credit Ms. Brown's testimony that "Ms. Govan had acknowledged that the moneys in [account 8554] belonged to Mr. Ebner." The trial court also appeared to give some weight to Ms. Govan's sworn testimony in the 2013 will contest case that the 8554 account was "Mr. Ebner's money and only established to give [her] heirs some funds if [she] happen[ed] to predecease Mr. Ebner," testimony with which Ms. Govan was impeached in the present case. The court concluded that the account "was a conditional gift" and that because the condition was not met, it became part of Mr. Ebner's estate.

In challenging this reasoning, Ms. Govan correctly points out that "[t]he bank account was established in her name and her siblings' names," but then makes a host of unsubstantiated assertions, including that "[t]he social security number attached to the account was that of Emma Govan,"; "Emil Ebner had nothing to do with the account"; Mr. Ebner "could not exercise any control over the funds in the account"; and he "clearly and unmistakably intended to permanently relinquish all interest in, and control over the bank account."

Ms. Govan's unfounded claims do not provide us with any basis to reject the trial court's reasoning or credibility assessments. Nor does Ms. Govan provide any record materials from which we might question the trial court's ruling regarding the

account's ownership. *See* D.C. App. R. 10(b)(2), 11(a) (explaining appellant's duty to transmit evidence supporting their arguments in civil cases). Based on our independent review of the Superior Court docket, *see* D.C. App. R. 10(a)(1), the exhibits at trial included a one-page account statement associated with the 8554 account as well as a copy of a check Ms. Govan deposited into the account, but it is not clear what these documents prove. Even more fundamentally, Ms. Govan points us to no case holding that the person named on a bank account is presumed to be its owner. We are aware of such cases in other jurisdictions,[12] but as well as not citing to any of those cases, Ms. Govan has failed to provide any framework for determining if and when a presumption of ownership might be rebutted. Finally, we cannot see how consideration of the 2013 will would materially change the trial court's analysis, nor does Ms. Govan suggest that it would.

We therefore affirm the trial court's determination that account 8554 is part of Mr. Ebner's estate.

---

[12] *See, e.g.*, *EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 474 (2d Cir. 2007) ("Under New York law, the party who possesses property is presumed to be the party who owns it. When a party holds funds in a bank account, possession is established, and the presumption of ownership follows."); *In re Int'l Pharmacy & Disc. II, Inc.*, 158 F. App'x 256, 260 (11th Cir. 2005) (recognizing that "in most states the name or title to a bank account creates a presumption of ownership in the titleholder" (citing *Nat'l Bank of Ga. v. Kennesaw Life & Accident Ins. Co.*, 800 F.2d 1542, 1545 (11th Cir. 1986))).

## IV. Conclusion

For the foregoing reasons, the judgment of the Superior Court is affirmed in part, vacated in part, and remanded in part for proceedings consistent with this opinion.

*So ordered.*